**ATLANTIC SHIP SUPPLY, INC.,**
Plaintiff,

v.

**M/V LUCY formerly named M/V El Centroamericana, and her owner and operator, Aztamar de Centroamerica, S.A., Defendants,**

and

**Metro Stevedores, Inc., and Central Oil Company, Inc., Intervening Plaintiffs,**

**Hercules Trading Co. S.A. Panama, Claimant.**

**No. 74-174 Civ. T-K.**

United States District Court,
M. D. Florida,
Tampa Division.
April 18, 1975.

Spicola & Lucarelli, Tampa, Fla., for plaintiff.

Corcoran, Henson & Blake, Tampa, Fla., for Metro Stevedores, Inc.

Gibbons, Tucker, McEwen, Smith, Cofer & Taub, Tampa, Fla., for Central Oil Co.

Dixon, Shear, Brown & Stephenson, Tampa, Fla., for claimant, Hercules Trading Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KRENTZMAN, District Judge.

This cause was tried to the Court on February 3, 1975 and these findings of fact and conclusions of law with citation of authorities are issued in conformity with Rule 52(a) of the

*Federal Rules of Civil Procedure.*

The primary issue which this Court was called upon to resolve was the effect of the sale of a Costa Rican flag vessel by a Costa Rican Court with respect to maritime liens (46 U.S.C.A. § 941) existing in favor of American suppliers which antedated such sale. For the reasons hereinafter stated, this Court holds that the maritime liens asserted by plaintiff and intervening plaintiffs were extinguished by the sale of the vessel by the Second Civil Court of San Jose, Costa Rica. Having heard the evidence without a jury, the Court makes the following findings of fact:

The plaintiff, Atlantic Ship Supply, Inc., is a Florida corporation and brings this action to foreclose its maritime lien against the M/V LUCY (formerly the M/V EL CENTROAMERICANO) for supplies and necessaries furnished to that vessel in the Port of Tampa, Florida between January 16 and January 24, 1973 in the total amount of $8,242.63.

Intervening plaintiff, Metro Stevedores, Inc., is a Florida corporation and brings this action to foreclose its maritime lien against the M/V LUCY for stevedoring services supplied to that vessel at the Port of Tampa, Florida, between January 17 and January 24, 1973, in the total amount of $8,886.00.

Intervening plaintiffs, Central Oil Company, Inc., is a Florida corporation and brings this action to foreclose its maritime lien against the M/V LUCY for diesel oil and intermediate fuel oil supplied to that vessel at the Port of Tampa, Florida, on or about January 1, 1973, in the total amount of $6,348.03.

Claimant, Hercules Trading Company, S.A. Panama, is a Panamanian corporation and is the present owner of the M/V LUCY and derives its title to such vessel from a Mr. George Lymberopoulos, who was the successful bidder at a public auction of that vessel which was held in Costa Rica on July 27, 1973, pursuant to Court order.

On or about the 27th day of March, 1974, the M/V LUCY (formerly the EL CENTROAMERICANO) was arrested in Tampa, Florida, by the United States Marshal pursuant to process issued out of this Court pursuant to Supplemental Admiralty and Maritime Rule C, and was at all times relevant to this lawsuit properly within the jurisdiction of this Court.

Claimant, Hercules Trading Co., S. A. Panama, after the arrest of said vessel in Tampa, Florida, made claim to that vessel and appeared in this action to defend its interests, and upon the consent of all the parties to this action, said vessel was released from arrest by order of this Court, it appearing that satisfactory security had been posted to secure the liens of the plaintiff and the intervening plaintiffs herein.

This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and the Court has jurisdiction of this cause and these parties in accordance with Title 28 U.S.C.A. § 1333.

The M/V LUCY (formerly the EL CENTROAMERICANO) was at the time of the services provided by the plaintiff and intervening plaintiffs, a vessel of Costa Rican Registry engaged in general commerce.

On the 5th day of March, 1973, an action was commenced in the Second Civil Court of San Jose, Costa Rica, by Citizens & Southern International Bank, an American banking corporation, to foreclose a first preferred ship's mortgage on the M/V LUCY which was duly recorded in accordance with Costa Rican law.

Pursuant to said action, the Second Civil Court of San Jose, Costa Rica, ordered that the M/V LUCY be "embargoed" which in our parlance is equivalent to arrest. On March 10, 1973, the M/V LUCY was duly arrested while she lay in territorial waters of Costa Rica at the Port of Puerto Limon, Costa Rica.

Plaintiff and intervening plaintiffs argue that:

1. The sale of the vessel did not comply with the formalities of Costa Rican law in that notice of the proceedings was never published in the Judicial Bulletin in conformity with Article 579 of the Commercial Code of 1964 and that therefore, such proceedings were void;

2. Even if such proceedings were not void under Costa Rican law by reason of failure to publish notice thereof in the Judicial Bulletin, the failure to publish offends our traditional Constitutional protections of notice and an opportunity to be heard, and therefore, this Court should not give its judgment full faith and credit or comity; and,

3. The proceedings in Costa Rica were analogous to our common law mortgage foreclosure proceedings and are therefore only binding on the parties before the Court and not strangers to such proceedings who were neither present and who did not have actual notice thereof.

## COSTA RICAN LAW

■ Article 579 of the Costa Rican Commercial Code of 1964, upon which plaintiffs rely to support their contention that Costa Rican law requires publication of notice of proceedings, only requires such publication when a known person cannot be located by the Court. It does not require publication of notice of the proceedings to the world at large. (Compare Supplemental Admiralty and Maritime Rule C(4)). This interpretation is supported by a reading of the relevant Article and the testimony of claimant's expert witness, Fernando Fournier, who fully explained the relevant Article and its interpretation in Costa Rica.

## NOTICE AND AN OPPORTUNITY TO BE HEARD

Plaintiffs' argument that they were denied our Constitutional protection of notice and an opportunity to be heard has been decided by the Fifth Circuit Court of Appeals in Zimmern Coal v. Coal Trading Association of Rotterdam, 30 F.2d 933 (5th Cir. 1929).

In that case a supplier of coal arrested a vessel to enforce a maritime lien after the vessel had been sold at a judicial sale in Holland. Its lien, like the ones at bar, antedated the sale. Dutch law, like Costa Rican law, did not require publication of notice of the proceedings, and the Court held that the failure to publish did not affect the validity of the sale.

■ It is not publication of notice of the proceedings which is the notice required by law. Seizure of the thing itself is the constructive notice which makes the decree of an admiralty court in an *in rem* proceeding binding on the entire world. A person having an interest in the *res* has constructive notice of its seizure. 2 Benedict on Admiralty § 231 (6th Ed.)

The evidence at trial was clear that the plaintiffs could have intervened in Costa Rica to protect their lien interests. Others did so. The fact that they may not have had actual notice of the proceedings is not controlling because they did have constructive notice.

## THE NATURE OF THE COSTA RICAN PROCEEDINGS

Plaintiffs argue that the Costa Rican proceedings were not *in rem* but were *in personam* and were analogous to our common law mortgage foreclosure proceedings.

■ It must first be stated that it is a recognized principle of admiralty that the sale of a vessel by a court with admiralty jurisdiction gives title to the purchaser good against the entire world:

"That the sale of a vessel made pursuant to the decree of a foreign court of admiralty, will be held valid in

every other country, and will vest a clear and indefeasible title in the purchaser, is entirely settled, both in England and America . . . (cites omitted)" The Trenton, 4 F. 657, 659 (E.D.Mich.1880).

Against this principle we will examine the Costa Rican proceedings. In 1853 Costa Rica enacted a Commercial Code, which in Book III deals with maritime matters. Article 546 of that Code provides that a sale of a vessel at public auction with judicial intervention extinguishes all the liability of the vessel in favor of her creditors. That Commercial Code was repealed with the enactment of the Comercial Code of 1964 *except* Book III.

The Commercial Code of 1964 insofar as it deals with chattel mortgages, provides in Article 571, Paragraph 2 that the foreclosure of a preferred mortgage gives title to the purchaser free of all liens. Article 533 of the Code of 1964 states that it applies to all *movables* and specifically enumerates vessels, their appurtenances, machinery and other accessories in Sub-Paragraph d. In Article 561 of the Commercial Code of 1853, which, as previously stated, was in effect at the time of the Costa Rican proceedings, it is provided that for all legal purposes not restricted by Book III, ships are to be considered as chattels or movables. Therefore, for substantive purposes the Old Code and New Code supplement and complement one another.

With respect to procedural matters, it appears that in 1888 Costa Rica enacted a Code of Civil Procedure which repealed all procedural matters inconsistent with it. The present Code of Civil Procedure derives from the enactment of 1888.

During the course of the proceedings in Costa Rica the attorneys for the Bank requested the Court to apply the formalities of Article 554 of the Code of 1883. That Article stipulates the mechanics for a public auction of a vessel. The Court refused to follow the old procedure because, (1) the old procedure had been superseded by the new; (2) to follow the old procedure would be prejudicial in the form of delay and added expense; (3) it was only a matter of procedure and not substance or "defense"; and, (4) the same result would be accomplished by using the new procedure as the old.

However, the refusal of the Costa Rican Court to follow the antiquated and repealed procedure of Article 554 of the Code of 1883 did not, in the opinion of Mr. Fournier, change the substantive effect of the vessel's sale by the Costa Rican Court, namely, the extinguishment of all liens. This Court is of the same opinion.

This Court is of the further opinion that the Costa Rican proceedings were truly *in rem:* The *res* was in the jurisdiction and under the control of a Court having the power to adjudicate its disposition. The Court's decree or Edict specified that the vessel was sold "free of encumbrances". And the proceedings were directed at the *res* because under Costa Rican law the litigants had to first exhaust their remedies against the property before they could look to any satisfaction *in personam.*

For the foregoing reasons the Court makes the following additional findings of fact:

The Second Civil Court of San Jose does have admiralty and maritime jurisdiction, and this jurisdiction derives from Book III of the Costa Rican Commercial Code of 1853.

The Commercial Code of 1853 provides in pertinent part that if a vessel is sold through judicial intervention that the purchaser at the sale of that vessel receives title to it free and clear of all liens and encumbrances.

■ Under Costa Rican law a first preferred mortgage on a vessel such as the one in favor of the Citizens & Southern International Bank creates a maritime lien on that vessel, and foreclosure of such lien, under Costa Rican law, renders to the purchaser at a public auction title free and clear of all liens and encumbrances.

The Second Civil Court of San Jose exercised its maritime jurisdiction with respect to the M/V LUCY.

All the procedural requirements of Costa Rican law were complied with in this instance, and the M/V LUCY was duly sold by Court order at public auction on July 27, 1973, and the purchaser at that sale, Mr. George Lymberopoulos, received title to the M/V LUCY free and clear of all maritime liens and encumbrances, including those of the plaintiff and intervening plaintiffs in this cause.

The Court further finds that under Costa Rican law a foreign judgment or decree is entitled to full faith and credit and that this Court should give equal treatment to the judgment and decree of the Court of Costa Rica which had subject matter jurisdiction and properly exercised that jurisdiction in this instance.

## CONCLUSIONS OF LAW

Wherefore, this Court concludes that:

1. The M/V LUCY was duly sold by the Second Civil Court of San Jose, Costa Rica, at a public auction held on July 27, 1973.

2. That the Second Civil Court of San Jose, Costa Rica, had jurisdiction over the M/V LUCY.

3. That the Second Civil Court of San Jose properly exercised its jurisdiction over that vessel.

4. That the purchaser at the sale of said vessel, Mr. George Lymberopoulos, and through him, the claimant, Hercules Trading Co. S. A. Panama, received title to that vessel free and clear of all liens and encumbrances, including the liens and encumbrances of the plaintiff and the intervening plaintiffs.

5. That this Court shall give full faith and credit and comity to the judgment and decree of the Second Civil Court of San Jose, Costa Rica, adjudicating the disposition of the vessel.

It follows that Final Judgment dismissing the complaints be granted in favor of the claimant, Hercules Trading Co. S. A. Panama.