**TODD SHIPYARDS CORPORATION,**
Libelant,

v.

**F/V MAIGUS LUCK, her engines, tackle, etc., Respondent,**

**Food Lane Stores of Canada, Limited, Owner-Claimant.**

No. 5519.

District Court, Canal Zone,
Division Balboa.

June 28, 1965.

De Castro & Robles, Balboa, Canal Zone, Crowell, Rouse & Varian, New York City, William T. Foley, Jr., New York City, for libelant.

Roy Phillipps, L. S. Carrington, Balboa, Canal Zone, for respondent, owner-claimant.

CROWE, District Judge.

This action was commenced by the filing of a libel in rem on March 10, 1963 by Todd Shipyards Corporation against F/V Maigus Luck, her engines, tackle, etc. to recover the sum of $48,900.00 and interest thereon as a balance due for repairs and supplies furnished to the vessel by libelant at Galveston, Texas between May 22, 1959 and July 9, 1959 inclusive.

The vessel was attached on the date of the filing of the libel and was subsequently released by the filing of sufficient security.

On July 3, 1963 an amended libel was filed and the exception and exceptive allegations filed by the owner-claimant and addressed to the libel herein are deemed by agreement to stand and be addressed to the amended libel.

The libelant, a New York corporation, engaged in the business of ship repair with an office at Galveston, Texas, performed work and services and furnished materials and supplies upon the vessel in a total sum of $98,900.00. The work was done between May 22, 1959 and July 9, 1959 and an invoice was rendered on July 15, 1959 at which time a payment of $50,000.00 was made leaving a balance due of $48,900.00.

The work was performed in accordance with a letter agreement dated May 26, 1959 which provided among other things that it would be performed only upon condition that the libelant had a maritime lien upon the vessel in the amount of its invoices.

The vessel sailed from libelant's yard at Galveston, Texas upon the completion of the work on July 9, 1959 and from that time it remained continuously outside of the United States until March 10, 1963 when it was attached at Balboa, Canal Zone.

At the time of the contract for repairs when the repair work was done and the materials and supplies were furnished and during several years while the vessel continued to operate outside the jurisdiction of the United States it was owned by Overseas Fishing Limited, a Lichtenstein corporation, but at all times was of Panamanian registry.

On July 10, 1959 (the day following the departure of the vessel from Galveston, Texas and without notice to libelant) a mortgage on the vessel was executed in Zurich, Switzerland in favor of Food Lane Stores of Canada, Limited, and the mortgage was subsequently recorded in Panama, Republic of Panama on August 10, 1959.

On March 22, 1962 a foreclosure proceeding on said mortgage was instituted in the Second Circuit Court of Panama and an order was entered in that court decreeing the levy of attachment and ordering the sale of the vessel for the payment of indebtedness due on the mortgage.

On July 18, 1962 title of the vessel was awarded to Food Lane Stores of Canada, Limited, owner-claimant in this action, as the highest bidder at an auction sale held in Panama, Republic of

Panama, for the sum of $133,334.00, and all liens ordered cancelled.

It was stipulated between the parties that the vessel was at no time during the pendency of the mortgage foreclosure proceedings in the Panama court within the territorial waters of the Republic of Panama.

There was a further stipulation that libelant knew that a proceeding had been pending in the Panamanian court to foreclose the mortgage on the vessel while the vessel was not within the territorial waters of the Republic of Panama.

The exception and exceptive allegations filed by the Food Lane Stores of Canada, Limited are two fold: (1) It alleges that libelant's claim asserting a maritime lien is stale and libelant is guilty of laches and (2) that libelant's maritime lien was extinguished by the sale of the vessel at auction in the Second Circuit Court of Panama as the proceedings were "in rem" and equivalent to a marshal's sale under the American admiralty law.

■ At the hearing in open court on January 13, 1965 it was determined after oral arguments that the question of laches can not be determined from the pleadings and exhibits alone and that it must remain open for further proof. Upon review of the record and the briefs filed herein, that opinion is reaffirmed.

The question of the extinguishment of the claim of libelant by the auction sale in Panama is not one that can be disposed of so easily, however, and will be determined from the pleadings and exhibits presently in the record.

■ Libelant in its original libel and amended libel filed herein has pleaded a maritime lien against the vessel under the general maritime law and by statute (46 U.S.C. §§ 971, 973 et seq.). This lien can only be extinguished by a proper proceeding in a court of competent jurisdiction, and the test to be imposed herein is whether or not the Second Circuit Court of Panama was such a court and if so, had it proceeded properly under the law of Panama to acquire juris-diction and effect such a sale that would be good against the world to extinguish all existing liens.

The Canal Zone Code in Title 5, Section 3198 gives full credit to the judgments of foreign courts "having jurisdiction" and thus the power of this court is limited to a test of that phase of the Panamanian litigation.

■ An examination into the jurisdiction of a foreign court is well known and if that court cannot exercise the jurisdiction which it has assumed, its sentence will be disregarded. Rose v. Himely, 4 Cranch (U.S. 1808) 241, 2 L.Ed. 608; Overby v. Gordon (1900) 177 U.S. 214, 20 S.Ct. 603, 44 L.Ed. 741; Hanson v. Denckla (1958), 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283.

We are limited in construing the Panamanian law to the statutes of that country and the testimony of expert witnesses. No cases have been cited supporting either the position of libelant or owner-claimant, who filed the exception and exceptive allegations, and only two expert witnesses were presented as authorities in this case.

The two experts are prominent, well-educated lawyers of vast experience in the practicing of Panamanian law relative to both civil and maritime matters but as so often happens when experts are presented, they assumed opposite views. The distinguished expert for the libelant testified that the actual physical seizure of the vessel in Panamanian waters was a prerequisite to jurisdiction under Panamanian law while the distinguished attorney testifying as an expert on behalf of the owner-claimant assumed a contrary position. The position of the libelant is the soundest position and is in keeping with the general maritime law and the admiralty law of the United States.

Admiralty Rule 10, U.S.C.A. states:

"Process in suits in rem

"In all cases of seizure, and in other suits and proceedings in rem, the process, if issued and unless otherwise provided for by statute, shall

be by a warrant of arrest of the ship, goods, or other thing to be arrested; and the marshal shall thereupon arrest and take the ship, goods, or other thing into his possession for safe custody, and shall cause public notice thereof and of the time assigned for the return of such process and the hearing of the cause, to be given in such newspaper within the district as the district court shall order; and if there is no newspaper published therein, then in such other public places in the district as the court shall direct."

Admiralty Rule 22, U.S.C.A. requires that the libel if "in rem" shall state "that the property is in this district."

"Requisites of libel in instance causes

"All libels in instance causes, civil or maritime, shall be on oath or solemn affirmation and shall state the nature of the cause, as, for example, that it is a cause, civil and maritime, of contract, or a tort or damage, or of salvage, or of possession, or otherwise, as the same may be; and, if the libel be in rem, that the property is within the district; and, if in personam, the names and places of residence of the parties so far as known. The libel shall also propound and allege in distinct articles the various allegations of fact upon which the libellant relies in support of his suit, so that the respondent or claimant may be enabled to answer distinctly and separately the several matters contained in each article; and it shall conclude with a prayer for due process to enforce his rights in rem, or in personam, as the case may be, and for such relief and redress as the court is competent to give in the premises."

The Handbook of Admiralty Law in The United States by Gustavus H. Robinson at page 358 states:

"The basis of jurisdiction in rem is the presence in the forum of the res."

Further on page 359, it is said:

"The proceeding in rem is begun by the seizure of a vessel by the marshal of the district in which the suit is brought. The idea that she is actually the subject of being taken into custody is fundamental."

Benedict on Admiralty, Sixth Edition, Volume 2, at page 43 gives a clear statement of the general maritime law as to proceedings in rem and the fundamental of the court's "dominion over the res."

"§ 231. Decree on Proceeding in Rem Binds All the World.

"The familiar principle that all the parties to a suit are bound by the decree has its widest application in cases of admiralty suits and proceedings in rem. The decree, as has been remarked, can dispose only of the thing but, so far as the thing is concerned, all the world is bound by the decree. That is to say, a decree in a proceeding in rem as to the title, or possession, or sale, or forfeiture of the thing, binds all the world. No man is allowed to come in and say that the decree does not bind him and that he will have the matter retried: this is because all the world is party to a suit in rem. By the regular process of the court, all parties who have any interest in the thing are warned to come in and defend it and seizure carries constructive notice with it. By virtue of the court's dominion over the res or thing all persons interested in it are deemed to be made parties, and their interests are brought under adjudication and by judicial sale under the decree the property passes, not merely the title or interest of a personal defendant. The reason upon which this doctrine stands will determine its extent. Every person interested in the res may make himself a party and appeal from the sentence. But knowledge or notice of the controversy is necessary in order to become a party and it is a principle of natural justice, of universal obligation, that before the rights of

an individual may be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceeding against his interest. Where admiralty proceedings are against the person, notice is served personally or by publication. Where they are in rem, notice is served upon the thing itself. This is deemed, necessarily, notice to all those who have interest in the thing and it is reasonable, because it is necessary, and because it is the part of common prudence for all those who have any interest in maritime property to guard that interest, by means of persons who are in a situation to protect it. Every person, therefore, who can assert any title to a vessel, has constructive notice of her seizure and may fairly be considered as a party to the libel; but those who have no interest in the vessel which could be asserted in a court of admiralty have no notice of the seizure, and can, on no principle of justice, be considered as parties in the cause, so far as respects the vessel. While there is no analogy in the Civil Rules to a suit in rem, Rule 71 does provide that when obedience to an order may be lawfully enforced against a person who is not a party, he is liable to the same process for enforcing obedience to the order as if he were a party. The situation of a person whose rights are cut off by a proceeding in rem in which he has not joined is somewhat similar."

The Panamanian statutes which are pertinent and listed below at first lead the reader to believe that under Article 1090 of Book Second in Chapter I of Title I of the Code of Commerce a sale of the ship in conformance with the "formalities prescribed" for the sale of real properties would be sufficient to extinguish all responsibilities of the ship from the day of the auction. Upon reading further, however, in Title 4, Chapter 6, Article 1527 of the same book of the Code of Commerce it is discovered that a ship subject to a maritime credit which

is due and owing "may be embargoed and sold judicially at the port where it may be found", and it says further that "the captain shall represent the owner in the respective suit."

■ As stated by Dr. Octavio Fabrega, witness for the libelant, this provision means that the judicial sale of a ship must take place where the ship is located. Not only is this in conformity with the general admiralty law of the United States and the maritime world but it is the most logical position to assume. Why should the captain be designated as the one to represent the owner in the respective suit if it were not supposed that he would be aboard the ship and be at the situs of litigation where he could properly make a defense?

This provision would be without meaning if the ship could be sold in Panama City while the ship was in European waters, for example, as the captain would not even know of the sale. The statute writers must have had in mind that the ship would be seized and the captain being on board could in truth "represent the owner."

Dr. Fabrega also interprets Articles 1531 and 1532 as further arguments in favor of his position.

Section 1531 of the same chapter says the ship may not be "embargoed by the personal debt of one of the co-owners of the ship" as the idea is not to impede or disturb navigation. Certainly this contemplates a physical seizure of the vessel when it is embargoed. Were this not in contemplation there would be no danger of impeding or disturbing navigation.

Section 1532 of the chapter provides that whenever a ship is embargoed "A detailed inventory shall be made of all its tackle and apparel, in the event they belong to the owner." How could a detailed inventory be made of the equipment of a vessel by an officer of the court in Panama unless that vessel were seized by the court and in the waters of the country of Panama? Without a seizure no inventory could be made and unless the vessel were in waters subject to the

administration of the court, any such attempted seizure or inventory could be legally repulsed.

The sections of the Panama law referred to and pertinent in this hearing are in detail as follows:

## "CODE OF COMMERCE

## "BOOK SECOND

## "Of Maritime Commerce

### "TITLE I

### "Of Ships

## "CHAPTER I

### "General Provisions

"Article 1077.—Merchant vessels, even though movable [personalty] by nature, constitute a special class which is governed by the provisions of the common [civil] law in so far as they are not modified by the provisions of the present Book.

"Article 1090.—The judicial sale of ships shall be effected with the formalities prescribed by the common (civil) law for the [judicial sale] of real properties.

"In the judicial sales there shall be extinguished all responsibilities of the ship from the day of the auction.

"The privilege with respect to the price shall be exercised in keeping with the provisions of the Chapter on creditors and order of preference."

## "CHAPTER VI

### "In Re the Embargo and Sale of Ships

"Article 1527.—The ship which is subject to a maritime credit which is due and owing may be embargoed and sold judicially at the port where it may be found at the instance of a legitimate creditor. The captain shall represent the owner in the re-

spective suit. [as amended by Law 40 of 1946] .

"Article 1529.—No ship which is laden and ready to sail may be embargoed nor detained except for the purpose of making effective maritime credits. The effects of the embargo may be avoided by filing satisfactory bond that the ship will return to port within the period fixed, under penalty of paying the debt sued for in so far as it is legitimate. [as amended by Law 40 of 1946]

"Article 1531.—A ship shall not be arrested, embargoed nor levied upon in its entirety for the private debts of a joint owner of the ship; the proceedings to be limited to the portion which the debtor has, without disturbing the navigation [of the ship] provided the other co-owners shall give bond for the portion which may correspond to the party proceeded against at the conclusion of the venture.

"Article 1532.—Whenever a ship is embargoed, a detailed inventory shall be made of all its tackle and apparel, in the event they belong to the owner."

(NOTE: The above code provisions are copied from the translation placed in evidence and are not taken from printed Panamanian publications.)

The expert witness for the owner-claimant, Dr. Carlos Icaza, supports the theory that the formalities prescribed by the common civil law for the judicial sale of real properties is proper in the case of judicial sale of ships in Panama. He testified that the mere placing of an "embargo" against the title of the vessel in the Registry office of Panama would be sufficient and no actual physical arrest of the ship necessary. Although the entire record in the Second Circuit Court of Panama is not here it is apparent that this was the procedure followed. Section 1090 which he is following and which was followed by the Panama Court cannot be permitted to stand alone and subsequent sections of the Code of Commerce

ignored. These sections are of equal dignity and should be read together. There is a well settled principle of statutory construction that a statute must be read and construed in the light of other provisions and they must be presumed to be consistent with each other in the absence of a showing to the contrary.

This principle of the law is too well known to warrant much discussion and is well stated in 50 Am.Jur. Statutes: "*Section 348. Provisions in Pari Materia.* It is a fundamental rule of statutory construction that sections and acts in pari materia, and all parts thereof, should be construed together and compared with each other. * * *"

"*Section 349. Construed as Parts of a General System.* Under the rule of statutory construction of statutes in pari materia, statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great connected, homogenous system, or a single and complete statutory arrangement. * * *"

"*Section 363. Harmonizing Statutes and Parts of Statutes.* Consistency in statutes is of prime importance, and in the absence of a showing to the contrary all laws are presumed to be consistent with each other. Where it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions. * * *"

As between the parties to the mortgage, namely, Overseas Fishing, Limited and Food Lane Stores of Canada, nothing can be determined at this juncture. No evidence is before the court as to whether or not Overseas Fishing, Limited entered its appearance to the action and thus had its rights determined.

Reed v. Steamship Yaka, etc., 3 Cir., 307 F.2d 203, cited as authority by both parties holds that a claimant can waive the normal requirement of arrest of the ship "so far as *its* interest in the vessel is concerned." (Italics supplied) There-fore, the action in Panama may be perfectly good as between the mortgagor and mortgagee without in any way affecting the right of the libelant who has not appeared in the proceedings.

See also Benedict on Admiralty, Sixth Edition, Vol. 2 at page 78 to the effect that the parties may enter their appearances and conduct the suit "in rem in any district satisfactory to them." This is based on the fiction, however, that the res is present and is not binding on other lien holders who have not entered their appearances.

The mere fact that libelant knew of the proceedings in Panama was not sufficient to have divested it of its lien. In view of the fact that the law of Panama requires a seizure of the vessel before maritime lien holders could be divested of their liens as a result of the conditions of sale, libelant could not be presumed to have been upon notice, either actual or constructive, merely because he had knowledge of an in personam proceeding between mortgagor and mortgagee.

As stated in libelant's reply brief on page 5: "The libelant herein declined to intervene in the proceeding in the Civil Court in Panama. To have voluntarily done so would have subjected it to the jurisdiction of the court which obviously did not have jurisdiction or custody in rem over the vessel MAIGUS LUCK since the Civil Court of Panama did not have the MAIGUS LUCK in custody in its territorial jurisdiction and lacked the power to adjudicate maritime liens and for that very reason libelant did not intervene."

There is no showing that mere knowledge of such a pending action under the law of Panama is sufficient notice to a lien holder to require him to intervene or be divested of his lien and this is not the general admiralty law. See Benedict quotations, supra.

For the reason stated the exceptive allegations are overruled and the case is continued for further orders.