891 F.2d 1547
 1990 A.M.C. 2478, 15 Fed.R.Serv.3d 1033
 Olafur THORSTEINSSON, Bergthor Havardsson, Plaintiffs-Appellants,
v.
M/V DRANGUR, her engines, tackle, machinery, appurtenances
and apparel In Rem, Vikur Shipping In Personam,
Defendants-Appellees,
Utvegsbanki Islands H.F., Claimant.
 No. 89-5058.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 16, 1990.
 
 Geoffrey Gill, Ft. Lauderdale, Fla., for plaintiffs-appellants
 Gerhardt A. Schreiber, Coral Gables, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before FAY and KRAVITCH, Circuit Judges, and CASTAGNA*, District Judge.
 FAY, Circuit Judge:
 
 
 1
 This admiralty appeal involves two seamen, plaintiffs-appellants Thorsteinsson and Havardsson, who brought suit in rem asserting various maritime liens against their vessel, the M/V Drangur ("Drangur"), after it had been bought by Utvegsbanki Islands HF ("Bank") at a judicial sale in Iceland. Plaintiffs-appellants also sued Vikur Shipping, their employer, in personam on the same claims. The district court found that the Icelandic judicial sale had extinguished all prior liens against the Drangur and entered final summary judgment in favor of defendants-appellees. The court also dismissed Vikur from the suit without prejudice, as plaintiffs-appellants had failed to perfect service on Vikur Shipping within the requisite period of time. We AFFIRM the district court's dismissal of Vikur Shipping. Because we question the basis on which the district court granted defendants-appellees' motion for summary judgment, however, we VACATE and REMAND that portion of the court's order for further proceedings in accordance with this opinion.
 
 I. BACKGROUND
 
 2
 A. The Parties and the Initial U.S. Proceedings
 
 
 3
 The M/V Drangur is a vessel of Icelandic registry, originally owned by an Icelandic corporation, Drangur Inc., and operated by Vikur Shipping ("Vikur"), an Icelandic entity, through its American subsidiary, Vikur Shipping U.S.A. The Drangur carried cargo in and around Central America, the Caribbean and the United States. Plaintiff-appellant Havardsson is an Icelandic citizen and resident, hired in Iceland by Vikur to work on the Drangur on May 10, 1987. His employment on the Drangur continued through February 22, 1988. Plaintiff-appellant Thorsteinsson is a dual citizen of Iceland and the United States and a U.S. resident. He was hired through Vikur U.S.A. to work on the Drangur on February 5, 1986, and remained a crew member until July 15, 1987.
 
 
 4
 In their complaint, plaintiffs-appellants made claims against the Drangur and Vikur for unpaid wages, reimbursement of personal expenditures made on behalf of the vessel, repatriation costs for Havardsson, and maintenance and cure for medical treatment received by Thorsteinsson while employed by Vikur. The district court issued a warrant of arrest in rem on February 25, 1988, to preserve plaintiffs-appellants' interest in the vessel and to perfect the jurisdiction of the district court over the vessel. The Drangur was seized on February 26, 1988.
 
 
 5
 On February 29, 1988, the Bank entered a Claim of Owner with the court, securing the right of defending against plaintiffs-appellants on behalf of the Drangur. The Bank simultaneously posted a cash bond to procure the release of the Drangur. On March 4, 1988, the Bank filed its answer to plaintiffs-appellants' complaint, which answer contained three affirmative defenses. First, the Bank alleged that it had purchased the Drangur in an Icelandic judicial sale on December 18, 1987, free and clear of all liens, thus barring plaintiffs-appellants' claims. Second, the Bank asserted that plaintiffs-appellants' claims were barred by gross laches because plaintiffs-appellants had known of the judicial proceedings against the Drangur in Iceland and had been aware of their obligation to file their liens in the Icelandic litigation. Finally, the Bank contended that the law of Iceland governed the case.
 
 B. The Icelandic Admiralty Action
 
 6
 All the parties agree on the procedural facts of the Icelandic sale. In late 1987, various Icelandic creditors, not including the Bank, filed claims against the Drangur in the court in Akureyri, Iceland. R1-31-5-6. The Icelandic court, possessing general admiralty jurisdiction, had specific jurisdiction over the Drangur by virtue of the fact that the Drangur was registered in the district in which the court was located. R1-30-5-6.[1] Upon initiation of the action, the Icelandic court gave the requisite general notice of the action against the Drangur by publication in an Icelandic legal gazette, as well as specific notice to the owners, registered mortgage holders, and other lienholders of the Drangur known to the court. Id. at 7-8; R1-41-2. The court need not, and usually does not, give notice to the crew members, and a vessel does not have to be arrested for the court to have jurisdiction. R1-30-6, 26. No official means of notice exists for non-registered lienholders outside of Iceland at the time the action is filed. Id. at 22.
 
 
 7
 Though the Bank was not an original participant in the Icelandic suit, it received notice as a preferred mortgage holder of the Drangur. At the auction of the Drangur on November 27, 1987, the Bank, as the highest bidder, obtained the vessel. R-1-31-27, 39. According to Icelandic law, for three months after the auction, any party with an interest in the vessel sold, whether or not a party to the original action, can appeal the auction on procedural or substantive grounds and thereby invalidate the auction. R1-30-9-10, 25. If no one objects or appeals to the court within four weeks, however, the court will approve the sale and issue a bill of sale stating the terms on which the vessel has been sold. Id. at 9-10. The bill of sale is also open to appeal for three months after its issuance; if the three-month post-auction period has not expired, an interested party may appeal both the auction and the bill of sale. Id. at 10-11, 21, 25. If no exception is made to the bill of sale within the requisite period, title to the vessel customarily passes free of all liens and encumbrances. Id. at 12. The court in Akureyri, Iceland, issued the bill of sale to the Bank on December 18, 1988. Supp. R1-46-2. Plaintiffs-appellants did not oppose the bill of sale in the Icelandic court before the three-month period expired.
 
 
 8
 C. The Effect of the Icelandic Proceedings on the U.S. Action
 
 
 9
 Based on the judicial sale in Iceland, the Bank moved the district court for summary judgment in favor of defendants-appellees, arguing that the district court had an obligation to recognize the Icelandic judicial sale and its effect of discharging all liens not previously asserted, including the claims presented by plaintiffs-appellants. The Bank reiterated its argument that laches barred Havardsson's claim and additionally contended that Thorsteinsson should be discharged from the suit for dilatoriness in discovery.
 
 
 10
 In opposition to defendants-appellees' motion for summary judgment, plaintiffs-appellants maintained that a condition precedent to recognition by American courts of foreign judicial sales in admiralty is the actual arrest of the vessel. Without such seizure to give due notice to all lienholders, plaintiffs-appellants contended, the judicial sale lacked due process and American courts would not uphold the foreign judgment. Plaintiffs-appellants further averred that American law rather than Icelandic law governed the case. Even if Icelandic law and the judicial sale were given effect by the district court, however, plaintiffs-appellants noted that, while Icelandic law might generally extinguish all maritime liens upon issuance of a bill of sale, the terms of the specific bill of sale of the Drangur transferred title to the Bank with all rights and obligations intact, excepting mortgages.[2] Thus, plaintiffs-appellants concluded that, as a matter of Icelandic law per the bill of sale issued by the Icelandic court, their liens transferred as an obligation of the vessel when it was sold to the Bank. Finally, plaintiffs-appellants denied that they had unduly delayed in asserting their claims against the Drangur or that such delay had prejudiced the Bank; therefore they argued that laches was no defense. Based on these arguments, plaintiffs-appellants cross-moved for summary judgment in their favor.
 
 
 11
 The district court granted summary judgment for defendants-appellees, holding that the law of the United States acknowledges that "the sale of a vessel, made pursuant to the decree of a foreign court of admiralty, will vest a clear and indefeasible title in the purchaser," and that "a judgment in rem that adjudicates the title to a ship is valid everywhere." R1-41-2, 3. The district court found that plaintiffs-appellants had failed to carry their burden of convincing the court to "nullify the effect of the judicial sale in Iceland," id. at 3, and therefore entered final summary judgment in favor of the defendants-appellees. This appeal followed to determine whether the district court erred in making plaintiffs-appellants bear the burden of proof regarding defendants-appellees' affirmative defense concerning the effect of the Icelandic sale, whether the sale of the Drangur by the Icelandic court should be given effect in the United States to terminate the crew members' liens, and the interpretation of the language of the bill of sale.
 
 II. DISCUSSION
 A. Standard of Review
 
 12
 This court set out the parameters of reviewing a grant of summary judgment in Clemons v. Dougherty County, 684 F.2d 1365, 1368 (11th Cir.1982):
 
 
 13
 Summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a decision granting or denying summary judgment, this court applies the same legal standards as those that control the district court in determining whether summary judgment is appropriate.
 
 
 14
 (citations omitted). In other words, we review the trial court's summary judgment decision de novo. Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1513 (11th Cir.1989); Tackitt v. Prudential Ins. Co. of America, 758 F.2d 1572, 1574 (11th Cir.1985).
 
 
 15
 B. The Burden of Proof Regarding the Icelandic Judicial Sale
 
 
 16
 The district court erred in assigning to plaintiffs-appellants the burden of convincing the court to nullify the effect of the Icelandic judicial sale. The court relied on Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), in which the Supreme Court held that summary judgment is warranted when a party fails to establish sufficiently an integral element of that party's case and the party would bear the burden of proof on that element at trial. Id. at 322-23, 106 S.Ct. at 2552-53.
 
 
 17
 Plaintiffs-appellants, however, would not bear the burden of proof regarding the validity of the judicial sale in Iceland, were this case to go to trial. The Bank first raised the issue of the judicial sale in their answer as an affirmative defense to plaintiffs-appellants' claims. The Bank thus has the burden of proving that the Icelandic sale extinguished all liens against the Drangur. See, e.g., Superior Oil Co. v. Devon Corp., 458 F.Supp. 1063, 1071 (D.Neb.1978) (general rule that "one who asserts the existence of a fact material to an issue in a case assumes the burden of proof" extends to affirmative defenses), rev'd on other grounds, 604 F.2d 1063 (8th Cir.1979); cf. Howard v. Green, 555 F.2d 178, 181 (8th Cir.1977) ("Res judicata is ... an affirmative defense, and the burden of proof is upon the party asserting it."); Natural Resources, Inc. v. Wineberg, 349 F.2d 685, 688 n. 3 (9th Cir.1965) (allegation that defendant is an innocent purchaser an affirmative defense; burden is on defendant to prove bona fide purchaser status), cert. denied, 382 U.S. 1010, 86 S.Ct. 617, 15 L.Ed.2d 525 (1966). In accordance with Celotex, then, and to uphold the summary judgment entered by the district court, the Bank needs to have established as a matter of law that the Icelandic judgment bars plaintiffs-appellants' claims in American courts.
 
 
 18
 C. The Effect of the Icelandic Judicial Sale
 
 
 19
 Plaintiffs-appellants have claimed against the Drangur for unpaid wages, maintenance and cure, reimbursement for purchases of necessaries for the vessel, and repatriation costs. With the exception of the last claim, American courts have accorded recognition to these types of maritime liens above all other types of liens. The Supreme Court has declared that "seamen's wages ... are sacred liens, and, as long as a plank of the ship remains, the sailor is entitled, against all other persons, to the proceeds as a security for his wages." The John G. Stevens, 170 U.S. 113, 119, 18 S.Ct. 544, 547, 42 L.Ed. 969 (1898). Congress has further protected seamen's wages by providing that if an employer unduly delays wage payments without sufficient cause, the employer will owe the seamen two days wages for each day the payments have been delayed. 46 U.S.C. § 10313(f)-(i).[3]
 
 
 20
 The duty of a shipowner to pay a seaman's maintenance and cure has been viewed as creating a maritime lien of the highest priority. T.J. Schoenbaum, Admiralty and Maritime Law § 5-2 at 160 (1987); see also, e.g., The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903) (maintenance and cure are a seaman's right, imposing liability on vessel); Fredelos v. Merritt-Chapman & Scott Corp., 447 F.2d 435, 439-40 (5th Cir.1971) (per curiam) (wages and maintenance and cure are maritime liens of the first priority). Congress has protected those who furnish supplies and other necessaries to vessels, granting such persons maritime liens against the vessel. 46 U.S.C. § 31342.[4] Further, Congress has provided for wage claims to take priority over preferred mortgages on a vessel; foreign preferred mortgages additionally are subordinated to suppliers' liens. 46 U.S.C. §§ 31301, 31326.[5]
 
 
 21
 Plaintiffs-appellants' complaint, standing alone, thus stated claims of maritime liens against the Drangur cognizable in any district court of the United States. The Bank countered, however, and the district court determined, that the judicial sale of the Drangur that took place in Iceland destroyed all interests not asserted in the Icelandic action and that the Bank took title to the vessel free and clear of all liens. The district court rejected plaintiffs-appellants' contention that our courts should not recognize the judgment of the Icelandic court because its admiralty procedures lacked sufficient notice to fulfill the due process required for American courts to give effect to foreign decrees. We find that plaintiffs-appellants' reasoning has merit and that the district court misconstrued the law regarding recognition of foreign admiralty judgments.
 
 
 22
 The district court correctly cited The Trenton, 4 F. 657 (E.D.Mich.1880), for the proposition that "the sale of a vessel, made pursuant to the decree of a foreign court of admiralty, will be held valid in every other country, and will vest a clear and indefeasible title in the purchaser...." Id. at 659; see also Hilton v. Guyot, 159 U.S. 113, 167, 16 S.Ct. 139, 144, 40 L.Ed. 95 (1895) ("A judgment in rem, adjudicating the title to a ship or other movable property within the custody of the court, is treated as valid everywhere."). The court also noted that The Trenton accorded validity to such foreign judgments in rem when the foreign courts have " 'a rightful jurisdiction, founded upon the actual, rightful, or constructive possession of the subject-matter.' " 4 F. at 659-60 (quoting J. Story, Conflict of Laws § 592). The district court applied these statements by the Trenton court to find that the Icelandic court had rightful jurisdiction over the Drangur, constructively possessing the vessel through possession of the Drangur's registration papers as required by Icelandic law, and that actual seizure of the vessel was not necessary for recognition of the Icelandic judgment in American courts.
 
 
 23
 The Trenton decision continues, however, by discussing grounds on which interested persons may impeach a foreign admiralty sale. One such ground is a showing "that the court or officer making the sale had no jurisdiction of the subject-matter by actual seizure and custody of the thing sold." Id. at 661 (emphasis added). Later in the opinion, the Trenton court held that "[w]hen the courts of such country have obtained jurisdiction of the res by actual seizure, they have full power to dispose of the property and to transfer the title, and such transfer will ordinarily be respected in every other country." Id. at 664 (emphasis added). The Trenton thus does not support the district court's conclusion that the Icelandic court had rightful jurisdiction over the Drangur nor that the Icelandic sale vested clear title in the Bank effective in our courts.[6]
 
 
 24
 The Supreme Court explained the rationale underlying the prerequisite of seizure for a valid in rem judgment to issue in The Mary, 13 U.S. (9 Cranch) 126, 144, 3 L.Ed. 678 (1815):
 
 
 25
 The whole world, it is said, are parties in an admiralty cause; and, therefore, the whole world is bound by the decision. The reason on which this dictum stands will determine its extent. Every person may make himself a party, and appeal from the sentence; but notice of the controversy is necessary in order to become a party, and it is a principle of natural justice, of universal obligation, that before the rights of an individual be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceedings against him. Where these proceedings are against the person, notice is served personally, or by publication; where they are in rem, notice is served upon the thing itself. This is necessarily notice to all those who have any interest in the thing, and is reasonable because it is necessary, and because it is part of common prudence for all those who have any interest in it, to guard that interest by persons who are in a situation to protect it.
 
 
 26
 (emphasis added); see also The Moses Taylor, 71 U.S. (4 Wall.) 411, 427, 18 L.Ed. 397 (1866) (seizure of vessel gives admiralty decrees validity against all the world). The district court in United States v. Steel Tank Barge H 1651, 272 F.Supp. 658 (E.D.La.1967) added that
 
 
 27
 [w]hatever results from the continuing remolding and discovery of what Due Process requires, its fundamental requisite is the opportunity to be heard. Although the notice required to effectuate the opportunity to be heard may differ as particular situations differ in factual and legal composition, both the Fifth and Fourteenth Amendments require notice as a requisite to Due Process.
 
 
 28
 Id. at 659 (footnotes and citations omitted). That court continued by stating that in in rem admiralty matters, notice satisfying due process means seizure. Id. at 660, 662.[7]
 
 
 29
 In cases following The Mary, foreign judgments which resulted from proceedings lacking other forms of notice required by American courts have been upheld. See, e.g., Zimmern Coal Co. v. Coal Trading Ass'n, 30 F.2d 933, 934 (5th Cir.1929) (notice by publication, while required in United States, not essential to validity of Dutch decree; seizure sufficient to impart notice in proceeding in rem); Atlantic Ship Supply, Inc. v. M/V Lucy, 392 F.Supp. 179, 181 (M.D.Fla.1975) (in Costa Rican judicial sale, publication not the notice required by law; seizure the constructive notice making decree of admiralty court in in rem proceeding binding on entire world), aff'd, 553 F.2d 1009 (5th Cir.1977). No foreign judgment regarding admiralty and maritime issues, however, has been given effect by American courts absent arrest in rem of the vessel. Cf. Belcher Co. v. M/V Maratha Mariner, 724 F.2d 1161, 1165 (5th Cir.1984) (release of attached vessel by posting bond in Dutch proceedings does not bar arrest in rem of same vessel on same claims in American proceedings); Todd Shipyards Corp. v. F/V Maigus Luck, 243 F.Supp. 8, 14 (D.C.Z.1965) (sale of vessel in Panamanian foreclosure proceeding without seizure of vessel does not divest liens, even when lienholder had actual notice of foreclosure).
 
 
 30
 The Bank therefore did not and could not have established as a matter of law that the mere existence of the Icelandic judgment bars plaintiffs-appellants' claims before the district court. The district court erred in entering summary judgment in favor of defendants-appellees solely based on the force of the Icelandic decree in admiralty.
 
 D. Issues to be Determined on Remand
 
 31
 The district court did not make any factual findings whatsoever in its order, nor conclusions of law on the other issues raised by the parties' summary judgment motions. We are unable to determine whether the court considered the questions of laches and the construction of the bill of sale to be otherwise trialworthy and therefore did not grant summary judgment on those bases, or whether it considered those questions alternative or supplementary bases on which summary judgment could be grounded but chose not to discuss them. Similarly, the court's order does not inform us whether Icelandic or American law would govern any analysis of these issues. Because we do not know what disposition the district court intended for these matters and because we find insufficient facts in the record to resolve these questions as part of our de novo review, we decline to address them on this appeal. We instead indicate in the following comments the additional factual inquiry that would aid in resolving the issues remaining in this case.
 
 
 32
 The cases cited in Section II-C stand for the proposition that notice satisfying due process may be presumed in foreign admiralty judgments only when the vessel has been seized. No case has yet addressed whether our courts will give effect to foreign judgments in rem without arrest of the vessel when the lienholders affected had actual notice and opportunity to participate in the foreign proceedings.[8] If plaintiffs-appellants here received actual notice of the Icelandic proceedings in time to meaningfully participate and assert their rights against the Drangur, our courts might recognize such as constitutionally sufficient notice and treat the Icelandic judgment as barring plaintiffs-appellants' claims. Even if the Icelandic judgment cannot be recognized under American law regardless of the circumstances under which it was entered, actual notice to plaintiffs-appellants could serve as evidence of undue delay in asserting their rights and support the Bank's affirmative defense of laches.
 
 
 33
 Neither possibility can be evaluated without first determining when each seaman learned of the proceedings in Iceland, what remedies were available in Iceland once they knew of the proceedings, and whether they were aware and had the opportunity to take advantage of the remedies available to them. The issue of undue delay raises additional questions of whether plaintiffs-appellants could have acted to protect their claims prior to the sale of the vessel and whether the law obligated them to file their claims earlier than when these claims actually were filed. In addition, laches only attaches when the delay causes prejudice to the opposing party. The district court therefore needs to determine whether Vikur knew of the seamen's claims when the suit in Iceland was filed and, if so, whether Vikur had an obligation to inform either the court in Iceland or the buyer at the auction of any claims made to it; when the Bank first learned of the seamen's claims; and whether the Bank in fact would be prejudiced by enforcement of plaintiffs-appellants' claims at this time.
 
 
 34
 After fact finding on and application of the law to the above issues, should the district court arrive at a conclusion adverse to the seamen, it must then confront the language of the bill of sale and decide what "obligations" transferred with title to the Drangur. This task would involve ascertaining whether the language in the bill of sale of the Drangur was typical of the Icelandic bills of sale described in deposition by the Icelandic-law expert or whether the language deviated from the usual formula. If the language of the Drangur bill proves atypical, the court must determine whether Icelandic law attaches a particular meaning to the words contained in that bill of sale. It might prove helpful to compare the bill to a typical American bill of sale.
 
 
 35
 Finally, we have referred to "the law" which the district court is to apply to its findings of fact. We purposefully have used the generic term as the question remains whether plaintiffs-appellants' claims should be evaluated under Icelandic or American admiralty law.[9] This question raises a further issue of whether Thorsteinsson, an American-Icelandic citizen residing in the United States, should have his claims treated differently than Havardsson, an Icelandic citizen.
 
 
 36
 We therefore VACATE the order granting summary judgment and REMAND this case to the district court for further factual findings and proceedings in accordance with this opinion.
 
 
 
 *
 Honorable William J. Castagna, U.S. District Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 This and all other statements of Icelandic law and procedure are based upon the deposition of Hakon Arnason, R1-30, an Icelandic attorney and the only person having expertise in Icelandic law found in the record. While Arnason brought copies of the Icelandic laws he cited to his deposition and they were marked as exhibits to be appended thereto, they do not appear in the record
 
 
 [2]
 The language of the bill of sale states:
 Since the terms of the auction have been fulfilled in every respect, and no comments or objections to the auction have been made, the auctioneer declares that Iceland Fisheries Bank [L]td. [the Bank], Reykjavik is the right and lawful owner of the vessel Drangur, with all the equipment that accompanies, and is supposed to accompany, the said vessel, in the vessel's present condition, with the rights and obligations attached to the property.
 All mortgages relating to the vessel shall be struck off the mortgage register.
 This Bill of Sale should be legally validated to certify the rightful possession by Iceland Fisheries Bank Ltd., Reykjavik, of this property.
 Supp. R1-46-3 (emphasis supplied).
 
 
 [3]
 46 U.S.C.A. § 10313 (1989) states in pertinent part:
 (f) At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier. When a seaman is discharged and final payment of wages is delayed for the period permitted by this subsection, the seaman is entitled at the time of discharge to one-third of the wages due the seaman.
 (g) When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.
 ....
 (i) This section applies to a seaman on a foreign vessel when in a harbor of the United States. The courts are available to the seaman for the enforcement of this section.
 
 
 [4]
 A person providing necessaries to a vessel
 * * *
 (1) has a maritime lien on the vessel;
 (2) may bring a civil action in rem to enforce the lien; and
 (3) is not required to allege or prove in the action that credit was given to the vessel.
 46 U.S.C.A. § 31342 (1989).
 
 
 [5]
 In this chapter--
 ....
 (5) "preferred maritime lien" means a maritime lien on a vessel--
 ....
 (D) for wages of the crew of the vessel....
 46 U.S.C.A. § 31301 (1989)
 (a) When a vessel is sold by order of a district court in a civil action in rem brought to enforce a preferred mortgage lien or a maritime lien, any claim in the vessel existing on the date of sale is terminated, ... and the vessel is sold free of all those claims.
 (b) Each of the claims terminated under subsection (a) of this section attaches, in the same amount and in accordance with their priorities to the proceeds of the sale, except that--
 (1) the preferred mortgage lien has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens); and
 (2) for a foreign vessel, the preferred mortgage lien is subordinate to a maritime lien for necessaries provided in the United States.
 46 U.S.C.A. § 31326 (1989).
 
 
 [6]
 Similarly, the Supreme Court in Hilton v. Guyot, while stating categorically that a foreign admiralty judgment in rem is valid everywhere, prefaced that statement by stipulating the assumption that jurisdiction, proceedings, and notice would be proper. 159 U.S. at 166-67, 16 S.Ct. at 144-45. Expanding on that theme later in the opinion, the Court held that
 [w]hen ... the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment....
 Id. at 205-06, 16 S.Ct. at 159-60 (emphasis added).
 
 
 [7]
 Judicial sales in admiralty in rem proceedings are effective against the whole world even as to those without notice. Thus, in a properly conducted proceeding in rem, a judgment and sale will operate to execute and extinguish all liens and claims against the vessel, even where the lienholders have absolutely no notice of the proceeding. This extinction of rights is constitutionally permissible because there is no practical alternative, that is, no way to get actual notice to unknown lienholders around the world, and it is thus reasonable because necessary. The seizure itself must operate as notice
 Steel Tank Barge H 1651, 272 F.Supp. at 662 (citations omitted).
 
 
 [8]
 Although the lienholders in the Belcher and Todd Shipyards cases had actual notice of the proceedings in the Dutch and Panamanian courts, respectively, both proceedings were in personam under the laws of the Netherlands and Panama, respectively, and not in rem. Belcher, 724 F.2d 1161; Todd Shipyards, 243 F.Supp. 8
 
 
 [9]
 See Lauritzen v. Larsen, 345 U.S. 571, 583-92, 73 S.Ct. 921, 928-33, 97 L.Ed. 1254 (1953) (factors to consider in determining which law to apply include situs of claim, law of flag of ship, allegiance-domicile of seaman, allegiance of shipowner, place of contract, access to foreign forum, and law of forum making choice of law); Romero v. International Terminal Operating Co., 358 U.S. 354, 382, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1959) (rationale of Lauritzen applies to general maritime claims as well as Jones Act); Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 309, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970) (another factor to consider is shipowner's base of operations); Gulf Trading & Transp. Co. v. Vessel Hoegh Shield, 658 F.2d 363, 367 (5th Cir. Unit A Oct. 1981) (additional factors to consider in choice of law), cert. denied, 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982)