K.S. SHIPPING AGENCY, TONY'S SHIPS AGENCY, K.S. MOTOR REWINDING, T.J. WELDING & FABRICATION, SAMOA EXPORT IMPORT INC., SHALHOUT SULUFAIGA STORE, STAR-KIST SAMOA INC., and SOUTHWEST MARINE OF SAMOA, INC., Plaintiffs,

v.

MATIRA SOUTH FISHING LTD., YOUNG DUK LTD., NATIONAL BANK OF NEW ZEALAND, LTD., and DOES I Through X, Defendants,

And F/V "MATIRA" fka F/V "YOUNG DUK," her engines, tackle, apparel, furniture, and appurtenances, in rem, Defendant.

High Court of American Samoa
Trial Division

CA No. 40-04

June 7, 2004

Before RICHMOND, Associate Justice, MAMEA, Associate Judge, and TAPOPO, Associate Judge.

Counsel: For Plaintiffs, Mark F. Ude
 For Defendants, David P. Vargas

ORDER DENYING IN PART AND GRANTING IN PART
MOTION TO QUASH RULE C ARREST OR SET AMOUNT
OF SUBSTITUTE SECURITY IN AN AMOUNT EQUAL TO
VALUE OF PLAINTIFFS' CLAIM FAIRLY STATED,
AND DENYING MOTION FOR SALE OF VESSEL

Unable to receive payment for supplies and services provided to F/V MATIRA ("the vessel"), Plaintiffs come before us seeking satisfaction for debts owed and making related claims. Plaintiffs include eight American Samoa businesses: K.S. Shipping Agency, Tony's Ships Agency, K.S. Motor Rewinding, T.J. Welding & Fabrication, Samoa Export Import Inc., Shalhout Sulufaiga Store, Star-Kist Samoa Inc. ("Star-Kist"), and Southwest Marine of Samoa, Inc. ("Southwest Marine"). We authorized the arrest of the vessel in Pago Pago Harbor on May 7, 2004 under T.C.R.C.P. Supp. Rule C.

The vessel was formerly known as F/V YOUNG DUK ("YOUNG DUK"). Defendant Young Duk Ltd. chartered the vessel when the Plaintiffs provided supplies and services. Defendant Bank of New Zealand, Ltd. ("National Bank of New Zealand") forced the sale of the vessel after it received the supplies and services. Does I through X are

designated as additional defendants who might own, operate, manage, maintain, control, charter, and navigate the vessel. Defendant Matira South Fishing Ltd. ("Matira South Fishing") claims ownership of the vessel and asserts the right to defend in rem claims against the vessel.

Defendants Young Duk Ltd., National Bank of New Zealand, and Matira South Fishing (together "movants") move for us to quash the arrest or set the amount of substitute security. For the reasons stated below, we set the amount of substitute security at $60,000. With this opinion and order, we also deny Plaintiffs' motion for a judicial sale.

### Factual and Procedural Background

East Ocean Fishing Limited ("East Ocean Fishing") formally owned the vessel, then known as YOUNG DUK. East Ocean Fishing mortgaged the vessel to the Bank of New Zealand. Young Duk Ltd. chartered the vessel and operated it out of Pago Pago harbor. From late 2002 until around the end of 2003, Plaintiffs, except for Southwest Marine, fitted the vessel for fishing by loaning supplies, services, or money.

After the vessel sailed from Pago Pago, Cook Islands Fish Exporters Ltd. had the vessel arrested in the Cook Islands for payment of services and money spent for the vessel's benefit. *See Cook Islands Fish Exporters Ltd. v. YOUNG DUK*, No. 31/2003 (Cook Is. Sep. 26, 2003) (Rarotonga). Following the vessel's release, National Bank of New Zealand placed East Ocean Fishing in receivership. Receivers sold the vessel to Matira South Fishing in the Cook Islands on November 17, 2003. (Garnier Aff. 3, Ex. C.) Matira South Fishing named the vessel MATIRA, registered it in the Cook Islands, and began fishing operations. The vessel eventually sailed back to Pago Pago harbor. Southwest Marine serviced and provided moorage for the vessel in April and May of 2004, which created a lien that we refer to as the Southwest Marine lien.

On May 7, 2004, Plaintiffs filed a complaint with a supporting affidavit and declaration, and moved for issuance of a warrant of arrest of the vessel. On the same day, we issued an arrest warrant and K.S. Shipping Agency took assignment of the Southwest Marine lien.

Plaintiffs filed an amended verified complaint on May 11, 2004. An authorized representative of K.S. Shipping Agency verified the complaint. Plaintiffs filed another amended verified complaint on May 13, 2004. Representatives of each Plaintiff verified the complaint. Plaintiffs claim payment for the loaned supplies, services, or money. Plaintiffs allege that National Bank of New Zealand is responsible for the ship's debts because of a failure to provide notice of the sale, negligence, and lack of due process. Furthermore, Plaintiffs allege that

Matira South Fishing and Young Duk Ltd. colluded to use the sale of the vessel to avoid payment of the debts. Matira South Fishing answered on May 14, 2004 and counter-claimed for wrongful arrest and abuse of process. Also on May 14, 2004, Defendants Matira South Fishing, Young Duk Ltd., and National Bank of New Zealand moved to quash the arrest or to set the amount of substitute security for the vessel. Three days later, Plaintiffs moved for a judicial sale of the vessel due to alleged unethical behavior of Defendants' counsel and the totality of the pleadings. We held a hearing on these two motions on May 18, 2004.

## Discussion

### I. Verified Complaint

Movants argue that the filed complaints are insufficient under T.C.R.C.P. Supplemental Rule C to support an arrest warrant. They contend that the first complaint lacks verification and the amended complaints lack proper verification. In this case, we find their argument lacking as a ground to quash the warrant.

We authorize the issuance of a warrant for the arrest of a vessel if we determine that conditions support an in rem action, as demonstrated by "the verified complaint and any other supporting papers." 29 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 705.03[3] (3d ed. 1999); *see* T.C.R.C.P. Supp. Rule C(2), (3). The verified complaint must describe the property with particularity and state that the property is or will be within American Samoa during the course of the action. T.C.R.C.P. Supp. Rule C(2). The T.C.R.C.P. Supplemental Rules also provide that "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." T.C.R.C.P. Supp. Rule E(2).

Both amended verified complaints meet the requirements of the T.C.R.C.P. Supplemental Rules because the complaints describe the property, inform that the property will be in American Samoa during the proceedings, describe the claims sufficiently, and have verification. Movants take issue with the sufficiency of the verification because the affiants' names are not printed with their verifying signature. However, the signatures of plaintiff representatives are enough to verify the complaint. Common law does not prescribe a particular form for affidavits and technical deficiencies do not render affidavits improper. *See* 3 AM. JUR. 2D *Affidavits* § 12 (1986). Moreover, the signature of the affiant constitutes one of an affidavit's four elements, which also include the caption or title, the venue, and the certification of a duly authorized officer. *See id.* §§ 12, 16. These four elements together authenticate the

affidavit, making the printed name of the affiant unnecessary.

We agree with movants that the initial complaint was unverified; however, we do not agree that the lack of verification constitutes a ground to quash the warrant in this case. Generally, under the T.C.R.C.P Supplemental Rules, "later verification . . . reach[es] back to an earlier, unverified filing." *Edelman v. Lynchburg College*, 535 U.S. 106, 117 (2002). The remedy for failure to verify a complaint to initiate in rem action is to "dismiss the complaint without prejudice," even when property has been seized. *United States v. $84,740.00*, 900 F.2d 1402, 1406 (1990) (applying FED. R. CIV. P. Supp. Rule C(2) in an in rem forfeiture action). Here, we decline to dismiss because defendants will suffer no harm by our denial of the motion to quash. Plaintiffs amended the complaint with verification as "a matter of course" before the first responsive pleadings were served. T.C.R.C.P. 15(a). The amended complaint satisfies the policy of the verification requirement, which is "to insure that an individual has responsibly investigated the allegations and found them to have substance." *United States v. Banco Cafetero Int'l*, 608 F. Supp. 1394, 1400 (S.D.N.Y. 1985). As the dismissal would be without prejudice, we could quash the initial arrest and immediately order the vessel re-arrested based on the complaint now before us. We currently have in rem jurisdiction, as discussed in the next section, and we secure our jurisdiction for the duration of the proceedings by ensuring that the vessel remains in American Samoa.

## II. Existence of Maritime Liens

We have admiralty jurisdiction under A.S.C.A. § 3.0208(a)(3). A maritime lien is a prerequisite to the exercise of our admiralty jurisdiction in an in rem action against a vessel. *Belcher Co. of Ala., Inc. v. M/V MARATHA MARINER*, 724 F.2d 1161, 1163 (5th Cir. 1984). Authorized by Congress to exercise authority as a "district court" with respect to Maritime Laws in 46 U.S.C. § 31301, we have jurisdiction to enforce federal maritime statutes of title 46 of the United States Code when our jurisdiction is not explicitly denied by the specific statute being enforced. *See Clifton v. Voyager Inc.*, 29 A.S.R.2d 80, 86-87 (Trial Div. 1995) (exercising jurisdiction over Jones Act claims, 46 U.S.C. app. § 688). Thus, we enforce the Maritime Lien Statute and use it to determine if a maritime lien triggers our jurisdiction. 46 U.S.C. § 31342.

Under the Maritime Lien Statute, "a person who provid[es] necessaries to a vessel on the order of the owner or person authorized by the owner . . . has a maritime lien on the vessel" and may bring an action in rem. 46 U.S.C. § 31342.[1] The "'Necessaries' explicitly includes

---

[1] The present Maritime Lien Statute, 46 U.S.C. § 31342, was "not intended to make any substantive difference with prior law" codified in

repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). Necessaries may also include services provided to the vessel, "anything that facilitates or enables a vessel to perform its mission or occupation." *Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 305 F.3d 913, 923 (9th Cir. 2002).

We have jurisdiction in this case because Plaintiffs obtained maritime liens when they provided supplies and services to the vessel. *See* 46 U.S.C. § 31342. First, the liens asserted by Plaintiffs are for the provision of necessaries. The supplies, such as filament spools, snaps, hooks, cutters, batteries, boots, and bait provided for the vessel are directly included in the definition of necessaries. 46 U.S.C. § 31301(4). Including the repair and maintenance of motors, generators, pumps, and like apparatus, the provided services are also considered necessaries because they are essential to the vessel's operation. The mooring provided by Southwest Marine was a necessary. In addition, Star-Kist financed the operation and maintenance of the vessel for fishing, specifically loaning money for a generator used on the vessel, and expected re-payment from the proceeds of the vessel's fishing.

Second, necessaries were provided to the vessel. Movant's reliance on *TTT Stevedores of Tex, Inc. and M/V JAGAT VIJETA*, 696 F.2d 1135 (5th Cir. 1980) is misplaced. As movants contend, *TTT Stevedores* distinguishes between furnishing supplies and services to a vessel, which creates a maritime lien, and extending credit to a person. However, the *TTT Stevedores* court held that "a presumption arises that one furnishing supplies to a vessel acquires a maritime lien, and the party attacking this presumption 'has the burden of establishing that the personal credit of the owner or charterer was solely relied upon.'" *TTT Stevedores*, 696 F.2d at 1139 (citations omitted). In *TTT Stevedores*, the defendant vessel failed to produce sufficient evidence that the suppliers relied on personal credit. *Id.* Similarly, failing to offer any evidence on the issue, movants here do not meet their burden of showing that Plaintiffs relied on the personal credit of any Defendant.

Third, the necessaries were provided to the vessel on order of the owner or of an authorized person. We find the May 13, 2004 verified complaint and the May 7, 2004 affidavit of Kevin G. Smith persuasive that the necessaries provided to the vessel were ordered under the authority of the vessel's ownership. Movants do not dispute the issue. In sum, with all of the elements of a maritime lien present, we have in rem jurisdiction over the vessel.

---

46 U.S.C. § 971. 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 9-3 n.1 (2d ed. 1994).

## III. Choice of Law

■ Movants assert that the law of the Cook Islands applies because the sale of the vessel occurred in the Cook Islands. Plaintiffs assert that the law of the United States applies. Neither party conducted a thorough choice of law analysis. Considering the applicable choice of law factors, we agree with Plaintiffs. We analyze seven factors to consider maritime choice of law: (a) the needs of the international system; (b) relevant policies of the forum; (c) relevant policies of other interested states; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in determination and application of the law to be applied. *Gulf Trading & Transp. Co. v. Vessel HOEGH SHIELD*, 658 F.2d 363, 367 (5th Cir. 1981), *reh'g denied* 670 F.2d 182 (5th Cir. 1982).

We find the choice of law analysis applied by the *Gulf Trading* court applicable here because the cases have similar factual circumstances. *Gulf Trading* concerned a contract for the provision of necessaries to the foreign flagged vessel HOEGH SHIELD in the Panama Canal Zone, under the United States jurisdiction, by an American corporation. *Gulf Trading*, 363 F.2d at 364. The owner of the HOEGH SHIELD was not a party to the supply contract, which was agreed to in Great Britain. *Id.* The HOEGH SHIELD was arrested while in Texas. *Id.* at 365. Likewise, this case concerns an agreement for the provision of necessaries to a foreign flagged vessel under the jurisdiction of United States by American companies. The current owner of the vessel was not a party to the agreement and the vessel was arrested in a United States jurisdiction.

■ We choose United States law and apply the Maritime Lien Statute. Agreeing with the *Gulf Trading* court, we find that "the Maritime Lien Statute represents a relevant policy of this forum that serves the needs of the international legal system as well as the basic policies underlying maritime law," because Congress intended that "an American Supplier of goods, services or necessaries to a foreign vessel obtains a maritime lien in the vessel when the goods or services are supplied or performed in the United States." *Id.* at 367-368. We will have little difficulty in applying and making a determination with the Maritime Lien Statute, especially as compared to the International Maritime Lien Convention or the New Zealand Admiralty Act 1973 asserted by the defense as, or like, the law of the Cook Islands. Application of the United States Maritime Lien Statute protects expectations and maintains the predictability of result because "it is expected that when necessaries are furnished to a vessel in an American port by an American supplier, the American Maritime Lien Statute will apply to protect that supplier regardless of . . . the nationality of the vessel." *Id.* at 368. The parties could have

contracted for an alternate choice of law. *Id.* Considering the factor of the policies of other interested states, we have as much of an interest in protecting Plaintiffs, American suppliers of the vessel, as the Cook Islands does in protecting any Cook Islands Defendants, especially the purchaser of the vessel.[2] Any interest New Zealand may have concerning the National Bank of New Zealand mortgage also does not exceed our interest in protecting the Plaintiffs. As all of the factors, but one, points strongly towards the application of United States law, we apply United States law to this case.

## IV. Continued Existence of Liens

Movants fail to meet their burden of proof showing that the sale erased the liens. As a result, we do not consider the liens extinguished.

 United States law recognizes international sales of vessels. A bona fide purchase of a vessel does not automatically clear the liens attached to the vessel. *See* 1 SCHOENBAUM, *supra*, at § 9-7. To extinguish prior maritime liens and "vest a clear and indefeasible title" in the purchaser, a court must conduct an in rem sale that satisfies due process. *Thorsteinsson v. M/V DRANGUR*, 891 F.2d 1547, 1552 (11th Cir. 1990) (quoting *The Trenton*, 4 F. 657 (E.D. Mich. 1880)). For a proper judicial sale, a court must at least have jurisdiction and provide sufficient notice to interested parties. *Id.* at 1552. Seizure provides notice to all the world that satisfies due process. *Id.* at 1553. The party that offers a judicial sale as a defense against maritime liens has the burden of proof that the sale extinguished the liens. *Id.* at 1551.

 Movants fail to meet their burden of showing that the sale erased the Southwest Marine lien. Apart in time from the other liens, the Southwest Marine lien remains on the vessel. The lien attached after the Cook Island sale. The T.C.R.C.P. Supplemental Rules do not require liens to have a minimum dollar amount before we have in rem jurisdiction over a vessel. *See* T.C.R.C.P. Supp. Rule C. This lien alone is enough to support a warrant for arrest and our jurisdiction.

Movants also fail to meet their burden of demonstrating that the other liens have been extinguished. In light of the evidence before us, the arrest of the vessel in the Cook Islands did not concern the subsequent sale, so it fails to provide adequate notice of the sale. National Bank of New Zealand, which forced the sale of the vessel, was not a party to the arrest. We have no evidence that National Bank of New Zealand made any claim, based on their mortgage or any other interest in the vessel,

---

[2] Young Duk Ltd. and National Bank of New Zealand have not filed answers in this case. As a result, we are uncertain of Young Duk's and National Bank of New Zealand's legal status.

before the arresting court. *See Cook Islands Fish Exporters Ltd.*, No. 31/2003, at 1. Also, there is no evidence of court adjudication or involvement with placing the vessel in receivership that qualifies as a judicial sale under United States law. (*See* Garnier Aff. 1, Annex C.)

 Movants also argue that the bona fide purchase of the vessel by Matira South Fishing cleared the liens. As this argument goes against current United States admiralty law, we disagree. *See* 1 SCHOENBAUM, *supra*, at § 9-7. However, after sale to a bona fide purchaser, an unrecorded lien holder must exert a high degree of reasonable diligence to preserve the lien or we will apply laches to bar the lien claim. *See id.*; *Bermuda Express, N.V. v. M/V LITSA*, 872 F.2d 554, 556 (3rd Cir. 1989). We save the laches issue for trial because we currently lack enough evidence to decide the issue, and the parties did not argue the issue at the hearing.

Movants argue that Plaintiffs improperly included the movants in the suit. This argument is irrelevant to this motion to quash; the arrest warrant concerns our in rem jurisdiction over the vessel.

Finding the liens valid based on the evidence currently before us, we deny the motion to quash the arrest warrant. We acknowledge that the existence of the liens impacts our jurisdiction and will consider additional argument and evidence concerning lien clearing events at trial.

## V. Security

 We fix the sum of the security to release a vessel when parties do not stipulate to an amount. T.C.R.C.P. Supp. Rule E(5)(a). The sum of the security covers "the amount of the plaintiff's claim fairly stated with accrued interest and costs." *Id.* We set the security at $60,000.00. This sum accounts for Plaintiffs' claim of approximately $40,000.00, pre-judgment interest of 6%, and costs. *See United Air Lines Employees' Credit Union v. M/V SANS END*, 15 A.S.R.2d 95, 106 (Trial Div. 1990) (finding costs of $8,249 to secure a vessel for a judicial sale and other related expenses).

## VI. Motion for Judicial Sale

Plaintiffs move for the sale of the vessel because of: (1) opposing counsel and opposing expert contact with Plaintiff Star-Kist without the knowledge or approval of Star-Kist's counsel; and (2) the totality of the pleadings, presumably the alleged collusion to commit fraud. To support the motion, Plaintiffs offer the affidavit of their counsel, Mark Ude, and the May 17, 2004 affidavit of Kevin G. Smith. At hearing, opposing counsel David Vargas denied that he or his firm made any contact with Star-Kist. We find the evidence of contact with Star-Kist and the totality

of the evidence and pleadings insufficient to grant this motion for a judicial sale.

### Order

1. Movants' motion to quash rule C arrest or set amount of substitute security in an amount equal to value of plaintiffs' claim fairly stated is denied in part and granted in part. We decline to quash the arrest warrant and set the security for the vessel at $60,000.00.

2. Plaintiffs' motion for sale of vessel is denied.

It is so ordered.