GULF AND SOUTHERN TERMINAL
CORPORATION, Appellant,

v.

S.S. PRESIDENT ROXAS, her engines, tackle, apparel, etc., in rem, Appellee.

No. 82–1447.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1982.

Decided March 10, 1983.

Certiorari Denied June 20, 1983.
See 103 S.Ct. 3115.

---

Robert Eikel, Houston, Tex. (Eikel & Davey, Houston, Tex., on brief), for appellant.

John Richard Newton, Wilmington, N.C. (Newton, Harris & Shanklin, Wilmington, N.C., on brief), for appellee.

Before HALL and MURNAGHAN, Circuit Judges, and MICHAEL,* District Judge.

MICHAEL, District Judge:

This case is before the court on appeal from the United States District Court for the Eastern District of North Carolina at New Bern. Gulf and Southern Terminal Corporation [hereinafter "Gulf"], the plaintiff/appellant, originally brought this admiralty action *in rem* in September of 1980 against a vessel, the S.S. President Roxas, the defendant/appellee, owned by Phillipine President Lines, Inc. Gulf's *in rem* complaint sought to foreclose on certain maritime liens which it had acquired in January of 1980 after furnishing stevedoring services to the vessel. At the time these services had been furnished, however, the vessel, then titled the S.S. Rio Yaqui, was owned by a Mexican corporation called Navimex. In the summer of 1980, Navimex went into bankruptcy pursuant to Mexican law. The vessel was then sold to its current owners "free of encumbrances" by Navimex's trustee in bankruptcy, pursuant to the authorization of the Mexican court.

In the proceedings below, counsel for the current owners of the vessel asserted that Gulf's maritime liens had been extinguished by the Mexican court's authorized sale of the S.S. Rio Yaqui. Gulf countered by claiming that, as a maritime lien holder, it had an ownership interest in the vessel which could be extinguished only in an *in rem* proceeding or in an *in personam* action where the Mexican court had jurisdiction over the lien holder. Since the Mexican court in its bankruptcy proceeding acted *in personam,* and since it had no jurisdiction over Gulf, the appellant contended that its liens were never extinguished and that the decree of the Mexican court purporting to sell the vessel "free of encumbrances" should not be recognized by American courts. The court below found that although the Mexican bankruptcy proceedings were conducted in an *in personam* form, the "arrest" of the vessel by the Mexican court was sufficient to give the proceedings an *in rem* characterization. Accordingly, the court below found the decree of the Mexican court extinguished Gulf's maritime liens and should be recognized by American courts. We affirm the court's decision.

Both parties below recognize that a maritime lien acquired under the American Maritime Lien Act, 46 U.S.C. § 971, is an ownership interest in the vessel itself. However, it has long been recognized by American courts that a judicial sale of a vessel by a court of a sovereign nation will extinguish a maritime lien where that court

---

* Hon. James H. Michael, Jr., United States District Judge for the Western District of Virginia, sitting by designation.

has either personal jurisdiction over the lien holder or has acted in a valid *in rem* proceeding. *See Atlantic Ship Supply, Inc. v. M/V Lucy,* 392 F.Supp. 179 (M.D.Fla.1975), aff'd, 553 F.2d 1009 (5th Cir.1977).

█ Gulf urges this court to refuse to recognize the Mexican court's decision because its proceedings were *in personam* and it lacked personal jurisdiction over the appellant. While Mexican law does not provide for an explicit *in rem* proceeding, it is apparent that the Mexican court's judicial sale of the vessel employed procedures virtually identical to those which are denominated as an *in rem* proceeding under American law. It is not disputed that the vessel was an asset of the bankrupt, under the control and proper jurisdiction of the Mexican court, nor is it contended that the Mexican court provided any less adequate notice to the world that the vessel was being sold free of liens and encumbrances than that which is routinely provided in *in rem* actions in American courts. Any assertion of the lien or claim of right to proceeds from the sale should have been brought to the attention of the Mexican court.[1]

If this court were to rule that the Mexican decree was not sufficient to transfer title to the vessel free and clear of all liens and encumbrances, we would be overturning hundreds of years of sound maritime precedent. As was noted in the seminal case of *The Trenton,* 4 F. 657 (E.D.Mich. 1888),

> The doctrine that the sale of a vessel by a court of competent jurisdiction discharges her from liens of every description, is the law of the civilized world.

4 F. at 661. Without such protection, *The Trenton* court noted,

> No one could possibly know the value of his purchase, for no one could foresee the amount of claims that might be made

against the vessel in other countries. It would also compel us to inquire in each case whether such foreign court could have taken cognizance of the claim, either by original proceeding or by petition against the proceeds of sale, and, as the foreign law in each case must be proved as a question of fact, the errors and confusion into which we should fall will be readily appreciated.

4 F. at 663.

In conclusion, we see no reason to deviate from the sound reasoning of the proceeding below. The vessel having been under the jurisdiction and control of the Mexican bankruptcy court, and that court's proceedings being proper and regular so far as the record shows, we find that court's order entitled to recognition and binding on American courts, as a decree which would in this country be denominated as an *in rem* decree.

AFFIRMED.

---

1. It is not clear from the record whether the appellant had actual notice of the sale of the S.S. Rio Yaqui, though it is probable that it did. The appellee, in its brief, suggests that even if Gulf had asserted its liens in the Mexican court, it would not have recovered anything, for under Mexican bankruptcy law, secured creditors receive priority over lien claimants with the former being entitled to a full share before the latter may recover anything on its claims. When the S.S. Rio Yaqui was sold by the Mexican court, the proceeds of the sale were first applied to the satisfaction of various secured creditors, leaving little, if any, for lien claimants (Appellee's Brief at 18–19).