*1145
 
 ALVIN B. RUBIN, Circuit Judge:
 

 This
 
 in rem
 
 libel against a vessel to recover for fuel bunkers supplied to it was dismissed on the ground that a pending action in the Netherlands, in which jurisdiction had been obtained by attachment of the vessel, was the equivalent of an
 
 in rem
 
 action and hence was
 
 lis alibis pendens.
 
 Because the Netherlands permits no
 
 in rem
 
 actions, and, therefore, the suit pending there is
 
 in personam,
 
 and because the ultimate issues in the two suits are different, we reverse the judgment of dismissal.
 

 Belcher Company of Alabama, Inc. (Belcher), filed an
 
 in rem
 
 libel against the vessel M/V Maratha Mariner of Bombay, India, and against all persons having or claiming any interest in the vessel, alleging that Belcher had supplied fuel bunkers to the vessel and had not been paid the amount due it, $99,344. The vessel had been chartered from its owner, Chowgule Steamship Company, Ltd. (Chowgule), by Armada Bulk Carriers of Denmark (Armada). Armada’s broker had ordered fuel from Baymar, a California broker, and Bay-mar had, in turn, contracted with Belcher, which supplied the fuel to the vessel in Mobile, Alabama. Chowgule asserts that Armada paid Baymar for the fuel and that Baymar, in turn, made partial payment to Belcher and subsequently went out of business before paying the balance.
 

 In 1979, Belcher had the vessel attached in the Netherlands to satisfy the alleged outstanding debt. Chowgule secured the release of the vessel by posting 275,000 Dutch guilders ($138,000 in U.S. dollars) in the form of a letter of undertaking, as security for its claim. That litigation is still pending in Rotterdam, the Netherlands. The vessel was later arrested in Houston, Texas, three years later, and this libel was initiated in the Southern District of Texas.
 

 The Federal Maritime Lien Act provides, “[a]ny person furnishing ... necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit
 
 in
 
 rem....” 46 U.S.C. § 971. This lien attaches when necessaries are ordered by and supplied to a charterer,
 
 [1]
 
 unless the supplier has notice that the person who orders the necessaries lacked authority to do so.
 
 [2]
 
 Thus, when Belcher supplied fuel to the M/V Maratha Mariner, a maritime lien may have arisen by operation of law, and, if such a lien did arise, its enforceability may be subject to any defenses that may be available to the vessel owner, such as laches. The owner of the vessel is not itself liable for payment, however, unless it has entered into the contract for the supply of necessaries. It has no personal obligation even though a lien attaches to its vessel.
 
 [3]
 

 Under the admiralty law of the United States,
 
 in personam
 
 and
 
 in rem
 
 actions may arise from the same claim, and may be brought separately or in the same suit. Supplemental Admiralty Rule C(l)(b). As its name implies, the
 
 in personam
 
 action is filed against the owner personally. An
 
 in rem
 
 action, on the other hand, is filed against the
 
 res,
 
 the vessel; and a maritime lien on the vessel is a prerequisite to an action
 
 in
 
 rem.
 
 [4]
 
 There is a third category of claims sometimes known as actions
 
 quasi in rem.
 
 Supplemental Admiralty Rule E. These are actions based on a claim for money begun by attachment or other seizure of
 
 *1146
 
 property when the court has no jurisdiction over the person of the defendant, but has jurisdiction over a thing belonging to him or over a person who is indebted to, or owes a duty to the defendant.
 
 [5]
 
 A state has jurisdiction by an action
 
 quasi in rem
 
 to enforce a personal claim against a defendant to the extent of applying the property seized to the satisfaction of the claim.
 
 [6]
 

 If American law had been applicable when the vessel was attached in the Netherlands, the supplier of fuel would have had a lien on the vessel and an action
 
 in rem
 
 could have been brought to enforce the maritime lien. The Netherlands action was, however, based on contract principles because Dutch law does not recognize the concept of maritime lien and, therefore, provides no mechanism by which such a lien can be enforced. The fact that an
 
 in rem
 
 action could not be brought in the Netherlands does not convert the attachment there filed into an
 
 in rem
 
 proceeding.
 

 Chowgule contends that Belcher has admitted the foreign action to be in effect
 
 in rem
 
 because Belcher has asserted in the course of that action that, despite the difference in the two legal systems, “the position of the owner of the vessel is not essentially enhanced or changed [under Dutch law]. In the present [Netherlands] case the vessel was attached, whereupon by the law of the U.S.A. a lien could have been served. In order to withdraw this attachment, a guarantee was obtained. Possible judgment against Chowgule and possible noncompliance therewith will lead to compensation under guarantee and therewith indirectly on that item of property which by the law of the U.S.A. would be the debtor.”
 

 This is not, however, an admission that the foreign attachment is a libel
 
 in rem.
 
 As Belcher’s pleading in the Netherlands case further states:
 

 By Dutch law of procedure which in effect does not provide for the action in rem, an action in personam must be brought therefore, whereby, be it so, the owner of the vessel becomes debtor of the claim under section 321 paragraph 1 Wvk, whereas by the law of the U.S.A. the ease itself, in the present instance the vessel, is the debtor.
 

 Therein the true difference lies. In the
 
 in rem
 
 action, the issues are whether: (1) Belcher delivered the claimed quantity of fuel to the M/V Maratha Mariner; (2) the fuel delivered to the bunkers was a necessary within the meaning of the Maritime Lien Act, 46 U.S.C. § 971; (3) the charges claimed are reasonable in amount; and (4) the person who placed the order had authority to do so, either real, apparent, or statutorily presumed. In the attachment action, the sole question is whether Chow-gule became liable to Belcher contractually. While it is necessary to resolve a number of questions to determine that issue, the reasonableness of the charges and the status of the fuel as necessaries are irrelevant, and the methods of proving the authority of the person who placed the order differ.
 

 The distinction between these types of proceedings is made clear by the Supplemental Rules. Attachment issues “with respect to any admiralty or maritime claim in personam” and its purpose is to “attach the defendant’s goods and chattels” or other assets if the defendant shall not be found in the jurisdiction. Rule B. Attachment may be used for any debt. An action
 
 in rem
 
 on the other hand, is available only to enforce a maritime lien or when authorized by statute. Rule C. The arrest warrant extends only to the vessel “or other property that is the subject of the action.” Rule C(3).
 

 The Fourth Circuit has held that the judicial sale of a vessel in a Mexican bankruptcy action was sufficiently similar in substance to an American
 
 in rem
 
 action to remove an
 
 in rem
 
 lien on the vessel.
 
 Gulf and Southern Terminal Corp. v. The SS President Roxas,
 
 701 F.2d 1110 (4th Cir.),
 
 cert.
 
 denied,-U.S.-, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983). In that case, the Mexican bankruptcy court had possession of the vessel, and sold it “free of encumbrances.” The sale erased the lien despite the fact that Mexican law does not provide explicitly for an
 
 in rem
 
 proceeding
 
 *1147
 
 both because the procedures employed were “virtually identical to those which are denominated as an
 
 in rem
 
 proceeding under American law” and because “the vessel was an asset of the bankrupt, under the control and proper jurisdiction of the Mexican court.”
 
 Id.
 
 701 F.2d at 1112. A bankruptcy court that has possession of any property has the power to sell the property free and clear of liens.
 
 [7]
 

 Attachment does in many respects resemble arrest. In each proceeding the vessel is seized and it may later be sold to satisfy a judgment. In each, the vessel itself may be released and other security substituted. Nevertheless, not only do the issues in the two actions differ; the basic theory on which each is brought is different. In the
 
 in rem
 
 proceeding the owner bears no personal liability. The vessel is sold solely to satisfy the lien. If the proceeds of the sale are inadequate, there is no liability on the owner’s part for the residue. Indeed the admiralty court will not render a personal judgment against the owner in excess of the amount of the release bond.
 
 [8]
 
 Only a personal action against the owner can establish such liability. In the attachment action, the object of the action is a personal judgment for the full sum due. The vessel is seized only to compel the owner’s appearance by subjecting to the court’s control property within its territorial jurisdiction. If the proceeds of sale of the vessel do not satisfy the judgment, the owner remains liable for the balance of the debt.
 

 Chowgule asserts that, when it provided security to release the vessel from attachment, this discharged the lien. With respect to the lien sought to be enforced, the release does transfer the lien from the vessel to the fund represented by the bond or letter of undertaking.
 
 [9]
 
 This does not imply that release from an attachment likewise clears the lien. An execution sale in an
 
 in rem
 
 proceeding clears the vessel of all liens.
 
 [10]
 
 An execution sale pursuant to a writ of attachment is not, however, the equivalent of a judicial sale in admiralty. The ship is not sold free of all liens; instead only the owner’s interest, whatever it may be, is adjudicated.
 
 [11]
 
 Indeed, it could not do so, for the attachment bond does not substitute for a lien but only for the owner’s personal liability.
 

 In its analysis of the
 
 iis alibis pen-dens
 
 argument, the district court correctly stated the applicable rule: a court having jurisdiction should exercise it unless a compelling reason not to do so is demonstrated.
 
 [12]
 
 It found compelling reason, however, in the supposed hardship on Chowgule of defending two actions and in the possibility of double recovery. Both of these can readily be averted without the damage to Belch-er that dismissal occasions. The Netherlands action has been tried and is awaiting decision. Staying proceedings in this action would avoid repetitive litigation of the is
 
 *1148
 
 sues there involved. If Belcher prevails, its judgment will be satisfied out of the security posted in that court. Thus both the expense of the second litigation and the possibility of double liability will be averted. If Chowgule prevails in the Netherlands action, its undertaking will be released and only those issues unique to the
 
 in rem
 
 action need be determined in the United States court. If, on the other hand, this action is dismissed and Belcher fails to prevail in the Netherlands action, it will be deprived of an opportunity to prove its claim
 
 in rem.
 
 No hardship is imposed on Chowgule by continuing the action, for the same undertaking posted in the Netherlands stands as security for the
 
 in rem
 
 action.
 

 For these reasons the judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 

 [1]
 

 . 46 U.S.C. § 973, as amended by Pub.L. No. 92-79, 85 Stat. 285 (1971);
 
 Dampskibsseiskzabet Dannebrog v. Signal Oil and Gas Company,
 
 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1939); G. Gilmore & C. Black, The Law of Admiralty 685 (2d ed. 1975) and cases cited therein.
 

 [2]
 

 .46 U.S.C. §§ 972 & 973; G. Gilmore & C. Black,
 
 supra
 
 685 et seq.
 

 [3]
 

 .
 
 See generally
 
 G. Gilmore & C. Black,
 
 supra,
 
 § 9-19;
 
 but see infra
 
 note 8.
 

 [4]
 

 . G. Gilmore & C. Black, § 1-12 at 35; see,
 
 e.g., The Rock Island Bridge,
 
 73 U.S. (6 Wall.) 213, 215, 18 L.Ed. 753, 754 (1862) (cited in G. Gilmore & C. Black at
 
 id); The Resolute,
 
 168 U.S. 437, 440, 18 S.Ct. 112, 113, 42 L.Ed. 533, 535 (1897);
 
 Rainbow Line, Inv. v. M/V TEQUILA,
 
 480 F.2d 1024, 1028 (2d Cir.1973).
 

 [5]
 

 . Restatement (Second) of Judgments (1982) § 8; James, Civil Procedure 613 (1965).
 

 [6]
 

 . Restatement (Second) of Judgments (1982) § 9-
 

 [7]
 

 .
 
 Matter of Buchman,
 
 600 F.2d 160, 165 (8th Cir.1979).
 

 [8]
 

 .
 
 The Susana,
 
 2 F.2d 410, 412-13 (4th Cir.1924);
 
 Red Star Towing & Transp. Co.,
 
 5 F.Supp. 502 (E.D.N.Y.1933); G. Gilmore & C. Black,
 
 supra,
 
 at 802.
 

 In a few cases, however, owners appearing in an
 
 in rem
 
 action to contest the libelants’ claims have been “treated as if they had been brought into court by personal process” and held personally liable for judgment in excess of the security.
 
 The Fairisie,
 
 76 F.Supp. 27, 34 (D.Md.1947),
 
 aff'd sub nom. Waterman S.S. Corp. v. Dean,
 
 171 F.2d 408 (4th Cir.1948) (quoted in
 
 Treasure Salvors v. The Unidentiñed Wrecked and Abandoned Sailing Vessel,
 
 569 F.2d 330, 335 (5th Cir.1978)); see
 
 also Mosher v. Tate,
 
 182 F.2d 475, 479-80 (9th Cir.1950); G. Gilmore & C. Black,
 
 supra,
 
 at 802-04.
 

 [9]
 

 .
 
 Gray v. Hopkins-Carter Hardware Co. (The Lois),
 
 32 F.2d 876, 878 (5th Cir.1929); G. Gilmore & C. Black,
 
 supra,
 
 at 799.
 

 [10]
 

 .
 
 The Trenton, 4
 
 F. 657 (E.D.Mich. 1880);
 
 Zim-mern Coal Co. v. Coal Trading Association of Rotterdam (The Totila x Harold),
 
 30 F.2d 933 (5th Cir.1929); G. Gilmore & C. Black,
 
 supra,
 
 at 787, et seq.
 

 [11]
 

 . G. Gilmore & C. Black,
 
 supra,
 
 at 802.
 

 [12]
 

 .
 
 See Gulf Oil Corp. v. Gilbert,
 
 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947);
 
 The Belgenland,
 
 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152 (1885);
 
 Chiazor v. Transworld Drilling Co. Ltd.,
 
 648 F.2d 1015, 1019 (5th Cir.1981);
 
 Poseidon Schiffahrt, G.M.B.H. v. The M/S Netuno,
 
 474 F.2d 203, 204 (5th Cir.1973);
 
 Perusahaan Umum Listrik Negara Pusat v. M/V Tel Aviv,
 
 
 *1148
 
 711 F.2d 1231 (5th Cir.1983) (upholding conditional dismissal on forum non conveniens grounds because only connection with U.S. forum was in rem action and adequate altema-tive forum was substantially more convenient; conditional dismissal preserved plaintiffs rights and remedies).