United States Court of Appeals,
Fifth Circuit.

No. 93-3194.

CRESCENT CITY MARINE, INC. and Central Boat Rentals, Inc.,
Plaintiffs-Appellants,

v.

M/V NUNKI, her engines, tackle, etc., in rem., Defendant-
Appellee.

May 18, 1994.

Appeal from the United States District Court for the Eastern
District of Louisiana.

Before ALDISERT[*], REYNALDO G. GARZA, and DUHÉ, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Crescent City Marine, Inc. and Central Boat Rentals, Inc.
appeal the district court's finding that they were not entitled to
a maritime lien. Finding no error, we AFFIRM.

## I. FACTS

The M/V NUNKI ("NUNKI") was owned by Impressa Transporti
Maritimi SRL, and under the time charter of Scanports Shipping,
Ltd. ("Scanports"). Scanports entered into a voyage charter with
Energy Transport, LTD., a subsidiary of Cabot Corporation.
Scanports, as the "disponet owner" of the NUNKI, appointed Global
Steamship Agencies, Inc. ("Global"), to act as local, husbanding
agent for the charterers after Global had been nominated by the
voyage charterer. Acting on instructions from the voyage

[*]Circuit Judge for the Third Circuit, sitting by
designation.

1

charterers, Global arranged to have the "slops"[1] removed from the NUNKI, and disposed ashore by Emerald Refining, Inc. ("Emerald"), an independent Louisiana service company. The voyage charterers agreed to pay Emerald $1 per barrel both to remove and dispose of the slops, plus the opportunity to sell any salvageable crude oil removed from the vessel. After the slops had been removed from the NUNKI, Emerald sent an invoice to the voyage charterers totalling $27,644.64, which was paid in full.

Although Emerald agreed with the voyage charterers to remove and dispose of the "slops" for a flat per-barrel charge, Emerald hired appellants Crescent City Marine and Central Boat Rentals' tugs and barges on a per-day basis. After the "slops" had been removed from the ship, Emerald encountered difficulties in disposing of the material. This resulted in Crescent City Marine and Central Boat Rentals' equipment being tied up much longer than had been anticipated by Emerald. Work that was supposed to be completed in two to three days actually required approximately twelve days to finish. The appellants incurred additional transportation costs of $80,768.66.

The appellants were never paid for their services and instituted this action by seizing the vessel claiming a maritime lien. The district court found that the appellants were not entitled to a maritime lien and vacated their seizure of the

---

[1]"Slops" is an industry term used to define the oily water residue in the bottom of the ship's tanks after it has been washed with hot water. This procedure is usually required when there is a change in cargo assignment.

vessel.  The appellants timely appealed to this court.

## II. DISCUSSION

The appellants claim the district court erred in:  (1) finding that the appellants did not perform the work at the request of a person authorized to act for the vessel;  (2) finding that the contract price to remove the slops was $1 per barrel;  (3) finding that the charges of the appellants were incurred solely because of delays Emerald encountered in disposing of the slops;  and (4) failing to hold that a maritime lien attaches when necessaries are ordered by or supplied to a charterer unless the supplier has notice that the person who ordered the necessaries lacked authority to do so.

We find that the district court did not err in any of its findings.  Therefore, the judgment of the district court is affirmed.

A. *Did the appellants perform the work at the request of a person authorized to act for the vessel?*

The appellants claim that they have met all of the requirements for a maritime lien, and that the trial court erred in holding that they were not entitled to a maritime lien.  The appellants also claim that the district court erred in holding that Emerald was the only contractor hired by the vessel to perform the work, and only it could have acquired a maritime lien.  The Federal Maritime Commercial Instruments and Lien Acts provides that:

> [A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
>
>     (1) has a maritime lien on the vessel;

3

> (2) may bring a civil action in rem to enforce the lien; and

> (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342(a).

Appellants assert that the district court erred in holding that they were subcontractors and that by definition, they did not perform the work at the request of a person authorized to act for the vessel. They claim that the "restrictive repair contractor" line of cases relied on by the district court does not apply to this case. *See, Bonanni Ship Supply, Inc. v. United States,* 959 F.2d 1558 (11th Cir.1992); *Farwest Steel Corp. v. Barge SEA-SPAN 241,* 828 F.2d 522 (9th Cir.1987), *cert. denied,* 485 U.S. 1034, 108 S.Ct. 1594, 99 L.Ed.2d 909 (1988). Rather, they claim that the "agent/broker" or "middle-man" line of cases is more consistent with the facts presented in this case. *See, Marine Fuel Supply and Towing v. M/V KEN LUCKY,* 869 F.2d 473, 475 (9th Cir.1988); *Belcher Co. of Alabama, Inc. v. M/V MARATHA MARINER,* 724 F.2d 1161 (5th Cir.1984). In the "agent/broker" or "middle-man" cases there were as many as five layers between the owner of the vessel and the service provider, yet the service provider was still permitted a lien against the vessel.

Appellants contend that the Federal Maritime Commercial Instruments and Liens Act broadly defines persons authorized by the owner to procure necessaries for a vessel. Although 46 U.S.C. §§ 31341, *et seq.* lists those persons presumed to have authority, that presumption is not conclusive. *Gulf Oil Trading Co., A Div. of*

4

*Gulf Oil Co. v. M/V CARIBE MAR,* 757 F.2d 743, 748-49 (5th Cir.1985). Appellants assert that persons falling outside the class presumed to have authority might still have authority to procure necessaries; there is merely no presumption of authority. Appellants further assert that it is axiomatic in this court that authorization, either actual, implied or fairly presumed, given prior to, during performance of the services, or ratified subsequent to the performance will suffice. *Atlantic & Gulf Stevedores, Inc. v. M/V GRAND LOYALTY,* 608 F.2d 197, 202 (5th Cir.1979).

Appellants assert that Steven Long, the President of Emerald, testified that Nick Kandiliotis, President of Global, was informed during their negotiations that:

(1) Emerald did not own the necessary tug boats and tank barges absolutely required to properly remove, transport and dispose of the NUNKI's slops; and

(2) Emerald was going to arrange with the appellants to provide the tug boats and the tank barges incident to the removal, transportation, and disposal of the NUNKI's slops.

Finally, appellants claim that Cabot and Global gave Emerald implied, fairly presumed and/or apparent authority to bind the vessel for all necessary and incidental equipment required to properly remove, transport and dispose of the vessel's slops. Cabot and Global gave this authority by contracting with Emerald, failing to inquire as to Emerald's abilities to complete the contracted task without the involvement of other parties, with the knowledge that it is the common practice in the industry for jobs of this sort to be farmed out to other parties, and the failure to

5

object or instruct Emerald otherwise.

Appellees, in contrast, assert that the pertinent provision of the Federal Maritime Commercial Instruments and Liens Act states as follows:

> (a) The following persons are presumed to have authority to procure necessaries for a vessel:
>
> > (1) the owner;
> >
> > (2) the master;
> >
> > (3) a person entrusted with the management of the vessel at the port of supply; or
> >
> > (4) an officer or agent appointed by—
> >
> > > (A) the owner;
> > >
> > > (B) a charterer;
> > >
> > > (C) an owner pro hac vice; or
> > >
> > > (D) an agreed buyer in possession of the vessel.

46 U.S.C. § 31341(a).

Appellees contend that the only section applicable is (a)(4), and since the appellants dealt only with Emerald, the specific question before the district court was whether Emerald was an agent appointed by a charterer. Appellees assert that since the district court found as a matter of fact that Emerald was not an agent, and was therefore, without presumptive authority, the appellants' case must fail because they offered no proof that Emerald had actual authority to bind the vessel.

Appellees assert that the district court specifically rejected Steven Long's testimony that Nick Kandiliotis, the President of Global knew that Emerald was going to subcontract the work. The

6

district court in its findings and conclusions stated:

> The voyage charterer and Global dealt only with Emerald Refining. Neither the charterers nor Global were aware that Emerald in fact subcontracted the work to the plaintiffs, and they did not ever learn of plaintiffs' involvement in the job until approximately one month later when Global was contacted by plaintiffs complaining that Emerald had not paid plaintiffs' invoices.

Appellees further assert that under Louisiana law, an agency relationship can be created either by an express appointment or by an implied appointment arising from apparent authority. *Richard A. Cheramie Enterprises, Inc. v. Mt. Airy Ref. Co.,* 708 F.2d 156, 158 (5th Cir.1983). Since there was no evidence that Emerald was expressly appointed as an agent, the only issue is whether there was an implied appointment. In order to establish implied agency, *Cheramie,* makes clear that the appellants had to prove that (1) the charterer, as principal, made some representation or manifestation directly to the appellants, and (2) the appellants reasonably relied on Emerald's purported authority as a direct consequence of those direct representations. *Id.* Appellees assert that there is no evidence whatsoever of any communication between the voyage charterer, purported principal, and the appellants. Consequently, there is no evidence that anything the alleged principal (Cabot) did, led the appellants reasonably to believe that Emerald was the charterers' agent. Furthermore, the district court specifically concluded that no one associated with the vessel knew that Emerald would subcontract the work to the appellants. Therefore, there is no evidence to suggest that the vessel either consented to or authorized Emerald's delegation of the work.

7

Appellees finally assert that Harriet Harrison, the President of Crescent City Marine, testified that she knew that Emerald was an independent contractor rather than an agent of the vessel.

We are bound to uphold the district court's findings of fact unless they are clearly erroneous. *Chance v. Rice University,* 984 F.2d 151, 153 (5th Cir.1993); FED.R.CIV.P. 52(a).

The district court specifically found that the appellants did not perform the work aboard the NUNKI at the request of a person authorized to act for the vessel. The district court further found that the slops were removed from the NUNKI in three days and that Emerald was fully paid for the removal. Finally, the district court found that the additional charges the appellants incurred were due solely to delays Emerald encountered in disposing of the slops.

As the appellees point out, Emerald does not fall within the category of those presumed to have authority to bind the vessel. Furthermore, based on general agency law, the appellants have not provided any evidence that Global did anything that would lead the appellants to reasonably believe that Emerald had implied authority to bind the vessel.

Therefore, the district court did not clearly err in finding that the appellants did not perform the work aboard the NUNKI at the request of a person authorized to act for the vessel.

B. *Did the district court err in finding that the contract price to remove the slops was $1 per barrel?*

The appellants claim that the district court erred in finding that the contract price to remove the slops was only one dollar per

8

barrel rather than one dollar per barrel plus the opportunity to sell any salvageable crude oil removed from the vessel.

The district court explicitly found that the agreement between Emerald and Global was simply that "Emerald would be paid $1.00 per barrel for whatever it took off the ship and would be entitled to keep whatever product was so removed for whatever purpose."

Therefore, the appellants' argument is meritless.

C. *Did the district court err in holding that the appellants' additional charges were incurred solely because of delays Emerald encountered in disposing of the slops?*

The appellants claim that the district court erred in finding that the appellants' additional charges were incurred solely because of delays Emerald encountered in disposing of the slops. The appellants argue that the agreement between Global and Emerald specifically stated that the quality of the crude oil had a water to oil ratio of 60 to 40. The appellees argue that the charges they incurred were a result of Global's misrepresentations, because the water to oil ratio was actually 98.5 to 1.5. This made the slops commercially useless and the charges incurred were solely the result of having to dispose of these useless slops.

The district court's finding that the additional charges incurred were a result of Emerald's delays is subject to a clearly erroneous standard of review. *See, Chance v. Rice University*, 984 F.2d 151, 153 (5th Cir.1993); FED.R.CIV.P. 52(a).

The appellants cite only to Steven Long's testimony for their proposition that the additional charges they incurred were a result of Global's misrepresentations. The district court specifically

9

rejected Steven Long's testimony.

Therefore, the district court did not clearly err in finding that the additional charges the appellants incurred were due solely to delays Emerald encountered in disposing of the slops.

D. *Did the district court err in failing to hold that a maritime lien attaches when necessaries are ordered by or supplied to a charterer unless the supplier has notice that the person who ordered the necessaries lacked authority to do so?*

Appellants assert that *Belcher Co. of Alabama, Inc. v. M/V MARATHA MARINER,* 724 F.2d 1161, 1163 (5th Cir.1984), states that a maritime lien "attaches when necessaries are ordered by and supplied to a charterer, unless the supplier has notice that the person who orders the necessaries lacked authority do so."

The facts of *Belcher* are similar to the case at bar. In *Belcher,* Armada Bulk Carriers of Denmark chartered the vessel. *Id.* Armada's broker ordered fuel from Baymar, a California broker, and Baymar contracted with Belcher, who actually supplied the fuel. *Id.* Armada paid Baymar and Baymar made partial payment to Belcher. *Id.* Belcher then brought an *in rem* action against the vessel. *Id.* The issue in *Belcher,* however, was whether Belcher could bring an *in rem* action against the vessel when the there was a pending legal action in Denmark. Therefore, the language appellants cite is *dicta.*

However, this *dicta* is of no help to the appellants. As the appellees point out, the President of Crescent City Marine testified that she knew that Emerald was an independent contractor and not an agent of the vessel. Moreover, the district court specifically found that the appellants knew when they were hired by

10

Emerald, that Emerald was an independent service company with no special relationship to the NUNKI.

Therefore, the district court did not err in finding that the appellants were not entitled to a maritime lien in this instance.

### III. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.