**UNITED STATES of America,
Plaintiff,**

v.

**BANCO INTERNACIONAL/BITAL
S.A., Defendant.**

**No. CV 99–6291 ABC (CWX).**

United States District Court,
C.D. California.

April 17, 2000.

Gregory Staples, United States Attorney Los Angeles, for Plaintiff.

Winthrop, Stimson, Putnam & Roberts, Philip Le B. Douglas, New York City, Akin, Gump, Strauss, Hauer & Feld, Stephen Mansfield, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION PURSUANT TO FED. R. CIV. P. 56.

COLLINS, District Judge.

Defendant's Motion pursuant to Fed. R.Civ.P. 56 came on regularly for hearing before this Court on April 17, 2000. After reviewing the materials submitted by the parties, argument of counsel, and the case file, the Court GRANTS Defendant's Motion for Summary Judgment.

### I. Background

#### A. Factual Background

The Government operated a money laundering "sting," Operation Casablanca, directed at Mexican banks from approximately October 1996 to April 1998. (Stmnt. of Genuine Issues ("Facts") ¶ 2.) For this operation, the Government utilized "money brokers," and confidential reliable informants who had pre-existing connections to drug traffickers and money launderers. As the Government describes it, the money laundering operated as follows:

[T]he Mexican bank would establish bank accounts in the names of straw owners at one of its branches. When

the government wished to launder money, it would wire-transfer the money (in the form of U.S. dollars) into these straw accounts. [¶] This frequently involved wire-transferring the money to one of the Mexican bank's accounts at a U.S. Bank (referred to as a "correspondent account"), for further credit to the straw account. [¶] The Mexican bank would then issue cashier's checks, again in U.S. dollars, to whatever fictitious names the informant or undercover agent would specify .... The Mexican banker involved would receive a commission for his participation in the money laundering.

(Complt.¶¶ 16–18.)

Defendant Banco Internacional/Bital is a Mexican bank that was targeted by Operation Casablanca. (Facts ¶¶ 1–5.) At least one Bital employee, Gildardo Martinez–Lopez, engaged in money laundering activities with undercover agents. (Facts ¶¶ 5–7.) Martinez became involved after an informant explained that the informant was a money launderer for the Cali cartel and needed more bank accounts "to spread the money around." (Complt.¶ 31.) Martinez agreed to assist the money launderers, which included signing the cashier's checks. Among other things, Martinez agreed to: deny knowledge of the money's origin, vouch for the existence of the fictitious companies, and act "stupid" if the Hacienda (the Mexican equivalent of the U.S. Treasury Dept.) inquired into his actions. (Facts ¶ 6.) Martinez also advised the informant to send checks in uneven amounts between $55,000 and $60,000, instead of the larger sized checks that the informant suggested. (Complt. ¶ 40; see also Facts ¶ 10.)

Martinez was unable to involve other Bital employees even though the Government requested that Martinez do so. (Facts ¶ 7.) The Government also sought to draft another employee, Luis Carlos Rivas, into Operation Casablanca. (Facts ¶¶ 11,-12.) Rivas was a trainee at the time and, therefore, was unable to actually partici-

pate in any money laundering transactions. (Facts ¶¶ 13,15.) Nevertheless, through Operation Casablanca, the Government laundered over $3.9 million in purported narcotics proceeds through Bital. (Facts ¶ 14.)

## B. Procedural Background

The first proceeding between these parties commenced on June 9, 1998, when the Government filed a Civil Forfeiture action against Bital's funds. (Facts ¶ 21.) The forfeiture action sought $3,148,884.40 which was seized from Bital's accounts in the United States. Bital filed a motion pursuant to Fed.R.Civ.P. 12(c) attacking the Civil Forfeiture action on June 25, 1999. On August 9, 1999, the Court limited the Government's forfeiture action "to the amount of bank commissions and bank charges that were not returned to the Government via the cashier's checks." *United States v. $3,148,884.40*, 76 F.Supp.2d 1063, 1064 (C.D.Cal.1999). On September 27, 1999, the parties stipulated to a dismissal with prejudice. (Facts ¶ 23.) The Government stipulated that Bital's fees and commissions were only $600. (Facts ¶ 16.) Accordingly, the Court ordered the action dismissed with prejudice on September 30, 1999. (Facts ¶ 23.)

On June 21, 1999, before the forfeiture action had terminated, the Government filed this Civil Penalty action against Bital pursuant to 18 U.S.C. § 1956(b). Bital filed the instant motion for summary judgment on January 3, 2000. Bital seeks summary judgment in its favor on the following grounds: (1) the claim preclusive effect of the prior judgment, (2) the lack of evidence that any employee knowingly engaged in money laundering to benefit Bital, and (3) the fact that the penalty sought by the government is unconstitutionally excessive. The Government opposes.[1]

## II. Discussion

### A. Summary Judgment Standard

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)). This means that, if the moving party has the burden of proof at trial, that party must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. 2548. "Instead, ... the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party satisfies this initial burden, "an adverse party may not

---

1. Because the Court finds that this action is precluded by the Forfeiture Action and that the Government cannot show liability under 18 U.S.C. § 1956, the Court does not address Bital's constitutional argument.

rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... *must set forth specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the non-moving party makes a sufficient showing to establish the essential elements to that party's case, and on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor. *Id.* at 248, 106 S.Ct. 2505; *Griffeth v. Utah Power & Light Co.*, 226 F.2d 661, 669 (9th Cir.1955).

## B. Claim Preclusion

 The doctrine of claim preclusion, or res judicata, precludes litigation of a subsequent lawsuit where the prior adjudication "(1) involve[s] the same 'claim' as the later suit, (2) ha[s] reached a final judgment on the merits, and (3) involve[s] the same parties or their privies." *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1404 (9th Cir.1993). Moreover, because the "doctrine of [claim preclusion] is motivated primarily by the interest in avoiding repetitive litigation, conserving judicial resources, and preventing the moral force of court judgments from being undermined," the doctrine precludes both all claims that were previously litigated, as well as "all claims that could have been asserted in the prior action." *International Union v. Karr*, 994 F.2d 1426, 1430 (9th Cir.1993) (internal quotations and citations omitted).

### 1. Same Claim.

 Courts consider a variety of factors in determining whether successive lawsuits involve a single claim, or cause of action, such as:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–1202 (9th Cir.1982). These factors, however, are considered "tools of analysis, not requirements." *Karr*, 994 F.2d at 1430 (quoting *Derish v. San Mateo–Burlingame Bd. of Realtors*, 724 F.2d 1347–1349 (9th Cir.1983)). The last of these criteria is considered to be the most important factor. *Costantini*, 681 F.2d at 1202. Therefore, courts can apply claim preclusion "on the grounds that two claims arose out of the same transaction, without reaching other factors cited in *Costantini*." *Karr*, 994 F.2d at 1430; *United States v. Northrop Corporation*, 147 F.3d 905, 910 (9th Cir.1998) (finding that the second suit was part of the same cause of action by considering whether or not the suits arise out of the same transactional facts).

### a. Same Transaction.

 In determining whether two events are part of the same transaction, courts consider whether they are "related to the same set of facts and whether they could conveniently be tried together." *Karr*, 994 F.2d 1426, 1429 *quoting Western Systems, Inc. v. Ulloa*, 958 F.2d 864, 870 (9th Cir. 1992). Here, the Government concedes that "[t]he civil Forfeiture Action arises out of the same facts and circumstances as the civil penalty action." (Facts ¶ 22). Accordingly, this factor is met.

### b. The in rem-in personam distinction: Claim-splitting is not authorized.

The Government contends, however, that it can split its claim because this

action is *in personam* while the prior action was *in rem* (Pl.'s Opp. at 11–12.) The Court finds the Government's theory unavailing.

The claim preclusive effect of successive *in rem* and *in personam* proceedings is a well-settled aspect of the doctrine. In an *in personam* proceeding, the court in *B & B No. 10 v. Olsen*, 121 F.2d 704 (2d Cir. 1941), applied the claim preclusion doctrine using a prior *in rem* action. *Olsen* involved claims for damages arising from a collision between the plaintiff's barge and a tugboat. Initially, the plaintiff initiated an *in rem* proceeding against the tugboat, and the tugboat was found to be at fault. *Id.* at 704. Then, plaintiffs instituted an *in personam* suit against the owners of the tugboat regarding the same accident. *Id.* The court held that the prior in *rem* precluded the subsequent *in personam* action. *Id.* at 705. Similarly, the court in *Burns Bros. v. Central R.R.*, 202 F.2d 910 (2d Cir.1953), recognized that claim preclusion should apply when the plaintiff first brings an *in personam* suit and subsequently brings an *in rem* suit for the same cause of action, as long as the party had an opportunity to bring both actions together.[2] *Id.* at 913.

■ Notwithstanding these cases, the Government cites another Second Circuit case, *Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359 (2d Cir.1995), for the proposition that the Supplemental Rules of Civil Procedure, applicable to in rem actions, authorize claim splitting. (Pl.'s Opp. at 11.) The Government's reliance on *Central Hudson* is misplaced. Although *Central Hudson* noted that the Supplemental Rules do not require a party to bring *in rem* and *in personam* claims in the same action, the court noted that the doctrine of claim preclusion might bar these successive suits. *Id.* at 366. Indeed, the Second Circuit declined to find that the applicable rule, Supplemental Rule C(1)(b), abrogated the decision in *Burns Bros.* "*Burns Bros.* and its predecessors should be read simply to apply res judicata principles to successive *in rem* and *in personam* actions, a holding with which Rule C(1)(b) is not inconsistent." *Id.* The court then analyzed whether claim preclusion applied to the case under review. *See id.* The fact that the *Central Hudson* court ultimately decided that the requirements of claim preclusion were not met in that case,[3] does not mean that claim preclusion allows a plaintiff to split an *in rem-in personam* claim.

The Government also relies on *Belcher Co. of Alabama v. M/V Maratha Mariner*, 724 F.2d 1161 (5th Cir.1984) for its theory. *Belcher* involved a dispute over unpaid debts arising out of the sale of fuel bunkers. *Id.* at 1163. In *Belcher*, the plaintiff initially filed suit in the Netherlands. This suit was *in personam*, as the Netherlands did not permit *in rem* actions. *Id.* While the litigation was still pending in the Netherlands, the plaintiff attached the vessel in Texas and filed suit *in rem*. *Id.* The defendant in the action did not seek to apply the claim preclusion doctrine; instead, it sought to dismiss the case because a lawsuit was pending in the Netherlands. *Id.*

The *Belcher* court, however, did state, without analysis, that Supplemental Rule C(1)(b) permits *in rem* and *in personam* actions that arise from the same claim to be brought "separately or in the same suit." *Belcher*, 724 F.2d at 1163. The

---

**2.** The Court notes that the United States Supreme Court has favorably cited *Burns Bros.*, stating that "courts have not felt themselves bound by this fiction [the fiction that an *in rem* action is against a piece of property] when confronted with the argument that because *in rem* and *in personam* actions involve different parties, therefore res judicata does not apply from an *in personam* action against an owner to an *in rem* action against his ship." *Continental Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 25, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

**3.** The *Central Hudson* court found that a lack of privity precluded application of the claim preclusion doctrine. *Id.* at 366–368.

Court finds the *Belcher* court's statement unpersuasive.[4] Supplemental Rule C(1)(b) states: "Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable." This language simply gives a party the option of suing in rem, *in personam*, or both *in rem* and *in personam*. The rule does not *permit* a party to bring successive *in rem* and *in personam* suits regarding the same claim. It also does not indicate an intent to abrogate the doctrine of claim preclusion. Indeed, the rule expressly provides that a plaintiff may proceed "[e]xcept as otherwise provided by law." Fed.R.Civ.P. Supp. C(1)(b). The law of claim preclusion precludes a party from proceeding on the same cause of action in a subsequent lawsuit. Thus, the Court finds, as did the Second Circuit in *Central Hudson*, that Rule C(1)(b) does not abrogate the claim preclusion doctrine. *See Central Hudson*, 56 F.3d at 366.

### c. Different Rights.

■ The Government further contends that these two proceedings involve different claims because different rights are involved. The Government focuses on the different purposes of forfeiture and penalty actions. It contends that the Civil Forfeiture action is remedial in nature, while the Civil Penalty action is punitive. The Government relies on *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), as support for its proposition that different rights are involved in forfeiture and penalty actions. *See id.* at 274–284, 116 S.Ct. 2135. *Ursery* held that a prior civil forfeiture action followed by a criminal penalty action did not violate the Double Jeopardy Clause because a civil forfeiture action was remedial and not punitive. Of course, for other purposes, the Supreme Court has found that forfeiture actions are, in part, punitive. *See Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)(holding that a forfeiture action is punishment for the purposes of the Eight Amendment's Excessive Fines Clause). Furthermore, the Supreme Court has never held that the claim preclusion doctrine is inapplicable because one of the actions was remedial and the other punitive in nature.[5] Thus, the Government is actually asking this Court to import Double Jeopardy principles into the claim preclusion doctrine. The Double Jeopardy Clause, however, is distinct from the claim preclusion doctrine. The Government points to no case that has collapsed the two concepts. Therefore, this Court declines to do so.

Moreover, even if different rights were involved, as the Government contends, it would not preclude the application of the claim preclusion doctrine. The most important factor in determining whether the claims are the same is "whether the two suits arise out of the same transactional" facts. *Costantini*, 681 F.2d at 1202. The Government's reliance on the remedial/punitive distinction does not override the fact that these two suits arise out of the same transactional facts. Accordingly, the Court finds that both the Forfeiture Action and this Civil Penalty Action arise from a single claim.

### 2. Final Judgment on the Merits.

■ The dismissal of an action with prejudice pursuant to a settlement agree-

---

**4.** In all fairness, the *Belcher* court did not find that the claim preclusion doctrine did not apply because of the Supplemental Rules. After all, claim preclusion had nothing to do with that case.

**5.** Defendant's citation to *United States v. Murray*, 963 F.Supp. 52 (D.Mass.1997), is not helpful. *Murray* involved a defendant's asser-

tion that a previous forfeiture action precluded a garnishment action based on a criminal judgment. Although the judgment arose from the same facts as the civil forfeiture action, the attempt to enforce the criminal judgment cannot be viewed as an action based on the underlying facts. *See* Restatement 2d Judgments §§ 17, 18 (claim preclusion does not extinguish claim on the judgment).

ment "constitutes a final judgment on the merits." *Karr*, 994 F.2d at 1429 (9th Cir. 1993) (citing *Lawrence v. Steinford Holding B.V.*, 820 F.2d 313, 316–17 (9th Cir. 1987)); *see also Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) (settlement agreement as claim preclusion); *Samuels v. Northern Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir.1991) (stipulation dismissing an action with prejudice as claim preclusion); *Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir.1995) ("A judgment that is entered with prejudice under the terms of a settlement, whether by stipulated dismissal, a consent judgment, or a confession of judgment, ... bars a second suit on the same claim or cause of action").

█ Here, the parties stipulated to dismissal of the Civil Forfeiture action with prejudice and the Court subsequently ordered the action dismissed with prejudice. Thus, the Civil Forfeiture action resulted in a final judgment on the merits.[6]

### 3. *Same Parties or Their Privies.*

█ Claim preclusion applies only if the two cases "involve the same parties or their privies." *Nordhorn*, 9 F.3d at 1404. "[W]hen two parties are so closely aligned in interest that one is the virtual representative of the other, a claim by or against one will serve to bar the same claim by or against the other." *Id.* at 1405; *see also Langton*, 71 F.3d at 935.

Here, the Government is a party to both actions. The only issue is whether Bital is considered a party to both actions.

6. The Government argues that claim preclusion does not preclude the present action because it did not intend to preclude litigation of this action in the settlement agreement. (Pl.'s Opp. at 13.) Only where parties reserve the right to split a claim will claim preclusion not apply. The Government did not reserve the right to split its claim in the settlement agreement. The Government's subjective, unexpressed intent to do so cannot revive that right. *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853 (9th Cir. 1992).

The Civil Forfeiture action was an *in rem* proceeding brought against the money, not Bital. Thus, Bital technically was not a party to the Civil Forfeiture action. Nevertheless, although the claimant in an *in rem* action is not technically a party, the parties in successive *in rem* and *in personam* suits are the same "in substance." *Olsen*, 121 F.2d 704. Courts have departed from the fiction that the property itself is the party in an *in rem* action. *Burns Bros.*, 202 F.2d at 913; *see also Continental Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 25, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)(criticizing the fiction that *in rem* and *in personam* actions involve different parties, in deciding whether to transfer an *in rem* action to another court). "Disputes arise between human beings, not inanimate things," and therefore, claim preclusion can apply to successive *in rem* and *in personam* suits. *Burns Bros.*, 202 F.2d at 913.

Bital was the claimant in the *in rem* proceeding. Thus, the Court finds that Bital was a party to both actions. Therefore, the Court concludes that both cases involve the same parties.

### 4. *A Full and Fair Opportunity to Litigate.*

For claim preclusion purposes, the requirement of a full and fair opportunity to litigate stems from the right to procedural due process.[7] *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480–482 & n. 22, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Communications Telesystems Int'l*

7. Because this requirement relates to procedural due process, whether a party had a full and fair opportunity to litigate often becomes an issue where the prior action involved an administrative proceeding and not a prior trial court action. *See, e.g., Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Communications Telesystems Int'l v. California Pub. Utility Comm'n*, 196 F.3d 1011 (9th Cir.1999); *People of State of California v. Federal Communications Commission*, 905 F.2d 1217 (9th Cir.1990).

*v. California Pub. Utility Comm'n,* 196 F.3d 1011, 1018 (9th Cir.1999). In *Kremer,* the plaintiff argued that claim preclusion did not apply because the procedures employed by the New York administrative agency were so deficient that they were not entitled to preclusive effect. *Kremer,* 456 U.S. at 480, 102 S.Ct. 1883. The Supreme Court found that the Due Process Clause imposed a "full and fair opportunity" requirement on the claim preclusion and the issue preclusion doctrine. *Id.* at 481 & n. 22, 102 S.Ct. 1883. The Court's primary concern was with *the procedures* of the first action and whether plaintiff had the ability to present his case and submit supporting evidence. *Id.* at 483, 102 S.Ct. 1883. After analyzing the scope of the administrative agency's investigation, the plaintiff's opportunity to present evidence, and the judicial review procedures, the Court concluded that the administrative proceeding satisfied the Due Process Clause and was entitled to preclusive effect. *Id.* at 484, 102 S.Ct. 1883.

 The mere fact that a claim was withheld from the prior proceeding does not mean that the prior proceeding did not provide procedural due process protections. *See Communications Telesystems,* 196 F.3d at 1018. Indeed, where a party has the ability to bring his or her claims in a prior proceeding but fails to do so, that plaintiff will not be heard to claim that he or she did not have a full and fair opportunity to bring that claim. *Id.* at 1019.

 Here, the Civil Forfeiture action complied with procedural due process requirements. The Government has not argued that the first proceeding was constitutionally infirm, nor has it argued that it

did not have an opportunity to bring the Civil Penalty in the initial proceeding. Similar to *Kremer,* the Government was provided with judicial review procedures and had an opportunity to present its case in the Civil Forfeiture action. *See Kremer,* 456 U.S. at 483, 102 S.Ct. 1883. The Government merely failed to present its Civil Penalty claim in the first proceeding.

The Government further argues that a party's incentive to litigate an action is a factor in considering whether the party had a full and fair opportunity to litigate. The Government's reliance on this argument is misplaced. A party's incentive to litigate may be relevant in the related issue preclusion doctrine. *See generally* 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4423 (1981)(discussing the rationale for considering a party's incentive to litigate in issue preclusion). However, a party's incentive is irrelevant in the claim preclusion doctrine. Claim preclusion focuses on the party's failure to bring a claim in the initial proceeding, barring not only claims that were actually litigated, but "also all claims that 'could have been asserted' in the prior action." *Karr,* 994 F.2d at 1430. Accordingly, it is unnecessary for the Court to consider whether a party had an incentive to litigate.[8]

The Court, therefore, finds that the Government had a full and fair opportunity to litigate this claim in the Civil Forfeiture action.

**C. Requirements under 18 U.S.C. § 1956.**

Alternatively, the Court finds that the Government has failed to show that Bital

---

8. The Government cites to *Nwosun v. General Mills Restaurants, Inc.,* 124 F.3d 1255 (10th Cir.1997), for the proposition that a party's incentive to litigate is a factor in considering whether the party had a full and fair opportunity to litigate for claim preclusion purposes. However, this case does not analyze the party's incentive to litigate its claim. In fact, the court applied claim preclusion without considering this factor.

Furthermore, as support for the proposition that the incentive to litigate affects the application of claim preclusion, *Nwosun* relied on *Sil-Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1520 (10th Cir.1990). *Sil-Flo,* in turn, relies on 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4423 (1981). In that section, Wright

should be held liable under 18 U.S.C. § 1956.

■ To impute an employee's acts to an employer, the employee must "be performing acts of the kind which he is authorized to perform, and those acts must be motivated—at least in part—by an intent to benefit the [employer]." *United States v. Cincotta,* 689 F.2d 238, 241–42 (1st Cir. 1982); *see also United States v. Beusch,* 596 F.2d 871, 877 (9th Cir.1979).

Bital asserts that the government has no evidence to show that Martinez, the Bital employee involved in the money laundering, intended to benefit Bital. (Def.'s Mot. at 13.) Additionally, Bital asserts that the government has no evidence to show that Rivas, another Bital employee, was involved in the money laundering scheme. (*Id.* at 19.) Accordingly, the burden shifts to the Government to come forth with evidence to show a genuine issue for trial on these matters. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

### 1. The Government fails to show that Martinez intended to benefit Bital.

■ The Government states that Martinez' acts were done within the scope of the authority granted to him by Bital. The Government then appears to argue that the mere fact that Martinez had authority to perform the acts which he did perform is sufficient to create a triable issue of fact as to whether Martinez intended to benefit Bital.[9]

Under the Government's theory, it would only be required to show that an employee had the authority to perform the acts which underlie the wrongful conduct without any distinct showing that the employee intended to benefit the employer. In effect, the Government's theory collapses the two-prong test into a one-prong test. None of the cases relied upon by the Government authorize such a result. Thus, showing that Martinez was authorized to perform the acts he performed does not support a finding that Martinez intended to benefit Bital.

The Government argues that Martinez' alibi explanation also shows that he intended to benefit Bital. Martinez stated that, if Mexican government officials began investigating, he would tell them that he was merely doing his job and providing Bital with a client. This statement fails to show that Martinez intended to benefit Bital. If anything, it shows that he was creating a cover so that he would not be implicated by the Mexican government.

The Government also relies on Bital's 1997 Annual Report. According to the Government, the Annual Report "emphasizes BITAL's commitment to training its personnel 'in the philosophy of BITAL,' which pegged its continued profitability to making its employees aware of client needs." (Pls.' Opp. at 18.) The document does show that Bital believed that it benefitted when its clients' needs were met. Bital's Report, however, does little to provide any insight into the intent of Martinez. As the Government points out, the focus is on Martinez' intent to benefit Bital, not on whether Bital received any actual benefit.[10] (*See* Pls.' Opp. at 22.)

---

discusses *issue preclusion,* not claim preclusion.

9. The Government actually argues that "[a]n employee acting within the scope of his employment must be presumed to have at least some intent to benefit his or her employer." (Pls.' Opp. at 16.) Of course, that statement is true but only because an employee is deemed to be acting within the scope of his employment only if he or she intends to benefit his employer. *See Beusch,* 596 F.2d at 877. The Court, therefore, assumes that the Government means to argue that an employee

acting within the scope of his authority is presumed to have an intent to benefit his employer.

10. For the same reason, the Court denies the Government's request for additional discovery. The Government asserts that discovery into the training program of Bital could support its case because it "may have discussed the benefits of attracting new accounts to the bank." (Pls.' Opp. at 18.) The Court infers from the 1997 Annual Report that Bital would benefit from the influx of new clients and that its employees know that Bital would benefit

### 2. The Government cannot impute Rivas' knowledge to Bital.

 Finally, the Government attempts to hold Bital liable because Rivas, who was being *trained* to become a manager, became aware of the laundering scheme but did nothing to prevent it. Rivas did not approve any transaction and did not have any authority or responsibility in connection with the laundering transactions. Nevertheless, the Government seeks to impute Rivas' awareness of the scheme to Bital. The Government seeks to support its position with two cases in which an employee played an active role in setting up the illegal transaction. *See United States v. Shortt Accountancy Corp.*, 785 F.2d 1448 (9th Cir.1986); *United States v. Farm & Home Savings Assoc.*, 932 F.2d 1256 (8th Cir.1991). Neither case supports the Government's position. The Government provides no basis for imputing Rivas' awareness of the illicit transactions to Bital or any responsible Bital employee.

In short, the Government presents no evidence by which a jury could find in favor of the Government. Thus, even if this claim were not precluded by the doctrine of claim preclusion, the Government has failed to meet its burden under Fed. R.Civ.P. 56.

### III. Conclusion

For the reasons articulated herein, the Court GRANTS summary judgment in favor of Defendant Bital on all claims asserted by the Government.

### SO ORDERED.

from acquiring new clients. That inference, however, does little to establish that Martinez,

or Rivas, had any intent to benefit Bital.